IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CELLTRACE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:09-CV-294-LED |
| | § | |
| AT&T INC., et al., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**DEFENDANT AT&T INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIMS
TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendant AT&T Inc. ("AT&T Inc.") files this First Amended Answer and Counterclaims to Plaintiff Celltrace LLC's ("Plaintiff") Complaint for Patent Infringement ("Complaint").

**THE PARTIES**

1.      AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 1 of the Complaint.

2.      AT&T Inc. admits the allegations contained in paragraph 2 of the Complaint.

3.      AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 3 of the Complaint.

4.      AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 4 of the Complaint.

5.      AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 5 of the Complaint.

6.      AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 6 of the Complaint.

7.      AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 7 of the Complaint.

8.      AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 8 of the Complaint.

9.      AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 9 of the Complaint.

10.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 10 of the Complaint.

11.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 11 of the Complaint.

12.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 12 of the Complaint.

13.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 13 of the Complaint.

14.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 14 of the Complaint.

15.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 15 of the Complaint.

16.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 16 of the Complaint.

17.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 17 of the Complaint.

18.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 18 of the Complaint.

19.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 19 of the Complaint.

20.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 20 of the Complaint.

21.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 21 of the Complaint.

22.     AT&T Inc. is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 22 of the Complaint.

## JURISDICTION AND VENUE

23.     With respect to paragraph 23 of the Complaint, AT&T Inc. admits that Plaintiff purports to pursue an action for patent infringement and, accordingly, this action arises under the provisions of the Patent Laws of the United States of America, Title 35, United States Code. AT&T Inc. admits that the Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

24.     With respect to paragraph 24 of the Complaint, AT&T Inc. admits that it is subject to personal jurisdiction in Texas and admits that venue is proper in the Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).  AT&T Inc. denies the remaining allegations in paragraph 24 as they pertain to AT&T Inc.  AT&T Inc. is without sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 24 of the Complaint.

25.     With respect to paragraph 25 of the Complaint, AT&T Inc. denies the allegations in paragraph 25 as they pertain to AT&T Inc.   AT&T Inc. is without sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 25 of the Complaint.

## PLAINTIFF'S ALLEGATIONS CONCERNING "PATENT INFRINGEMENT"

26.     With respect to paragraph 26 of the Complaint, AT&T Inc. admits that, on its face, United States Patent No. 6,011,976 (the "'976 Patent") identifies that it issued on January 4, 2000, and is entitled "Telecommunications System with Value Added Service Directory and an Integrated Circuit Module Therefor."   AT&T Inc. admits that a copy of the '976 Patent was attached as Exhibit A to the Complaint.   AT&T Inc. denies that the '976 Patent was duly and legally issued.   AT&T Inc. admits that, on its face, United States Patent No. 7,551,933 (the "'933 Patent") identifies that it issued on June 23, 2009, and is entitled "Telecommunications System." AT&T Inc. admits that a copy of the '933 Patent was attached as Exhibit B to the Complaint. AT&T Inc. denies that the '933 Patent was duly and legally issued.   AT&T Inc. is without sufficient knowledge or information to either admit or deny the remaining allegations contained in paragraph 26 of the Complaint.

27.     With respect to paragraph 27 of the Complaint, AT&T Inc. denies the allegations contained in paragraph 27 as they pertain to AT&T Inc.   AT&T Inc. is without sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 27 of the Complaint.

## PLAINTIFF'S ALLEGATIONS CONCERNING "INFRINGEMENT OF THE '976 PATENT"

28.     With respect to paragraph 28 of the Complaint, AT&T Inc. incorporates by reference its responses to paragraphs 1-27 of the Complaint.

29.     With respect to paragraph 29 of the Complaint, AT&T Inc. denies the allegations contained in paragraph 29 as they pertain to AT&T Inc.   AT&T Inc. is without sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 29 of the Complaint.

30.     With respect to paragraph 30 of the Complaint, AT&T Inc. denies the allegations contained in paragraph 30 as they pertain to AT&T Inc.   AT&T Inc. is without sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 30 of the Complaint.

## PLAINTIFF'S ALLEGATIONS CONCERNING
## "INFRINGEMENT OF THE '933 PATENT"

31.     With respect to paragraph 31 of the Complaint, AT&T Inc. incorporates by reference its responses to paragraphs 1-27 of the Complaint.

32.     With respect to paragraph 32 of the Complaint, AT&T Inc. denies the allegations contained in paragraph 32 as they pertain to AT&T Inc.   AT&T Inc. is without sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 32 of the Complaint.

33.     With respect to paragraph 33 of the Complaint, AT&T Inc. denies the allegations contained in paragraph 33 as they pertain to AT&T Inc.   AT&T Inc. is without sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 33 of the Complaint.

## DEMAND FOR JURY TRIAL

34.     AT&T Inc. admits that Plaintiff has requested a trial by jury.

## PRAYER FOR RELIEF

35.     AT&T Inc. denies any and all allegations contained in the Prayer for Relief of the

Complaint as they pertain to AT&T Inc. and denies that Plaintiff is entitled to any of the relief

requested in paragraphs (a) through (e) of Plaintiff's Prayer for Relief or to any relief in any form

whatsoever from AT&T Inc.   AT&T Inc. further denies each and every allegation in the

Complaint to which it has not specifically responded.

## AFFIRMATIVE AND OTHER DEFENSES

### First Defense

36.     AT&T Inc. has not willfully or otherwise infringed, contributed to the

infringement of, or actively induced others to infringe any valid and enforceable claim of the

'976 Patent or the '933 Patent, either directly or indirectly, either literally or under the doctrine

of equivalents.   AT&T Inc. also does not willfully or otherwise infringe, contribute to the

infringement of, or actively induce others to infringe any valid and enforceable claim of the '976

Patent or the '933 Patent, either directly or indirectly, either literally or under the doctrine of

equivalents.

### Second Defense

37.     The claims of the '976 Patent and the '933 Patent are invalid for failure to comply

with the requirements of Title 35 of the United States Code, including, without limitation, 35

U.S.C. §§ 101, 102, 103 and/or 112.

### Third Defense

38.     By reason of proceedings in the United States Patent and Trademark Office, and

by reasons of amendments, statements, admissions, omissions, representations, disclaimers

and/or disavowals made by the applicants or on their behalf, Plaintiff is estopped from asserting infringement of the '976 Patent and the '933 Patent against AT&T Inc.

### Fourth Defense

39.     Plaintiff's claims are barred to the extent that Plaintiff has dedicated to the public systems, methods, and products disclosed in the '976 Patent and/or the '933 Patent but not literally claimed therein.

### Fifth Defense

40.     Plaintiff is prohibited from recovering damages for activities alleged to have occurred before Plaintiff complies with 35 U.S.C. § 287.

### Sixth Defense

41.     Plaintiff is prohibited from recovering damages for activities alleged to have occurred before Plaintiff provides actual notice of activities alleged to infringe.

### Seventh Defense

42.     Plaintiff's claims for equitable relief are barred because Plaintiff has adequate remedies at law.

### Eighth Defense

43.     Plaintiff's claims for injunctive relief are barred because Plaintiff has failed to meet the requirements for injunctive relief.

### Ninth Defense

44.     AT&T Inc. has not engaged in any conduct that entitles Plaintiff to attorneys' fees or costs.

**Tenth Defense**

45.     To the extent that Plaintiff asserts claims and/or requests damages for alleged infringement occurring more than six years before the filing of this action, such claims and relief are barred by the applicable statute of limitations, 35 U.S.C. § 286.

**Eleventh Defense**

46.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

**Twelfth Defense**

47.     Plaintiff's claims are barred, in whole or in part, by the doctrine of prosecution history laches.

**Thirteenth Defense**

48.     Plaintiff's claims are barred to the extent that Plaintiff has consented to Defendant AT&T Inc. engaging in any acts accused of infringement, and to the extent that Plaintiff has waived the right to enforce the '976 Patent and the '933 Patent.

**Fourteenth Defense**

49.     The '976 Patent and the '933 Patent are unenforceable due to inequitable conduct. On information and belief, one or more persons involved in the prosecution of the applications leading to these patents violated their duty of candor and good faith to the United States Patent and Trademark Office (the "PTO") by intentionally and deceptively failing to disclose to the PTO information material to patentability of the '976 and the '933 Patents.

50.     Defendant AT&T Inc. asserts this inequitable conduct defense with respect to the '976 and the '933 Patents based on the information presently available to it.  Because discovery is still in progress, AT&T Inc. reserves the right to amend or supplement this defense as appropriate.

The '976 Patent - Failure to Disclose the GSM Standard

51.     Wayne David Michaels, Anthony Richard Timson, and Aden William Dervan are the named inventors of the '976 Patent.  They were personally involved in the prosecution of the '976 Patent application.  Their signatures appear on an inventor declaration under 37 C.F.R. § 1.63 in the prosecution history.  In the declaration, Messrs. Michaels, Timson, and Dervan "acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations. §1.56(a)."  Submission of Missing Parts of Application, February 13, 1996, at 2.

52.     Richard C. Stevens was an attorney at the law firm formerly known as Killworth Gottman Hagan & Schaeff and is now an attorney at the law firm of Stevens & Showalter.  Mr. Stevens was personally involved in the prosecution of the '976 Patent application.  Mr. Stevens' signature appears on the application transmittal form and other communications with the PTO in the prosecution history.

53.     On information and belief, one or more persons described in paragraphs 51-52 above (collectively, "the '976 Applicants"), in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '976 Patent application, which renders the '976 Patent unenforceable.

54.     On information and belief, one or more of the '976 Applicants knew about, but never disclosed, material prior art during the prosecution of the '976 Patent application.  More specifically, they knew about but intentionally and with deceptive intent failed to disclose material portions of the GSM Standard during the prosecution of the '976 Patent application, including at least GSM 2.17, 3.40, 3.41, and 11.11.  Those portions of the GSM Standard were

not considered by the PTO during prosecution of the '976 Patent application.  Those portions of the GSM Standard were published before the alleged priority date of the '976 Patent.

55.     The prior art portions of the GSM Standard the '976 Applicants failed to disclose to the PTO were material to patentability of the '976 Patent.  The '976 Applicants referred repeatedly to "GSM system[s]" in the specification of the '976 Patent, because such systems based on the GSM Standard were highly relevant to the subject matter they sought to claim.  In fact, the '976 Applicants stated that their alleged invention was "particularly applicable to global telecommunication systems in which the mobile cellular telephone networks of various countries or areas communicate using a common standard," citing systems implementing the GSM Standard as the primary example of such a system.  '976 Patent, Col. 2, ll. 46-49; s*ee also e.g.*, Figs. 1-2, and 4; Col. 3, ll. 10-14, 19-20, and 57-58.  The '976 Applicants' statements regarding the particular applicability of their alleged invention to a GSM system alone establishes the materiality of the prior art GSM Standard.

56.     On information and belief, one or more of the '976 Applicants had knowledge of the GSM Standard described above.  The '976 Patent itself suggested that GSM used a common standard.  '976 Patent, Col. 2, ll. 46-51.  As discussed above, the '976 Applicants also expressly suggested the applicability of their alleged invention to GSM systems.  On information and belief, the '976 Applicants were familiar with the details of the GSM Standard, which described details highly relevant to the elements of Claims 2-5, 10-14, and 16-18 of the '976 Patent.

57.     During the prosecution of the '976 Patent application, the PTO found that no prior art of record satisfied the claims of the '976 Patent.  However, at least under Celltrace's apparent interpretations regarding the '976 Patent claims,[1] the GSM Standard anticipates or renders

---

[1] Nothing in this pleading is an admission by Defendant AT&T Inc. that any of Plaintiff's interpretations or allegations is correct.

obvious all of the elements of Claims 2-5, 10-14, and 16-18 as detailed in the Invalidity Chart for the '976 Patent by the GSM Solution, attached as Exhibit 1 to Defendants' Invalidity Contentions ("GSM Solution, Exhibit 1").  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '976 Patent claims, if any of the '976 Applicants had submitted the GSM Standard to the examiner during the prosecution of the '976 Patent, the examiner would have found the '976 Patent's claims unpatentable based on that prior art.

58.    The GSM Standard is not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '976 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 1.  As the GSM Solution, Exhibit 1 demonstrates, the GSM Standard is material to patentability of at least Claims 2-5, 10-14, and 16-18 of the '976 Patent.  Because of the high materiality of the GSM Standard, as evidenced by the GSM Solution, Exhibit 1, at least under Celltrace's apparent interpretations regarding the '976 Patent claims, the PTO would have found Claims 2-5, 10-14, and 16-18 unpatentable had it known of the GSM Standard.

59.    Applicants' familiarity with the GSM Standard, along with the high materiality of that reference as set forth in the GSM Solution, Exhibit 1, demonstrates that one or more of the '976 Applicants intended to withhold the GSM Standard during the prosecution of the '976 Patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '976 Patent unenforceable.

The '933 Patent - Related Applications Unenforceable

60.    As described in paragraphs 51-59 above, on information and belief, one or more persons involved in the prosecution of the '976 Patent application, in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during

the prosecution of the '976 Patent application.  This inequitable conduct renders the '933 Patent unenforceable because the '933 Patent is a child of the '976 Patent.

<u>The '933 Patent - Failure to Disclose GSM 2.17 and Other Portions of the GSM Standard</u>

61.     Wayne David Michaels, Anthony Richard Timson, and Aden William Dervan are the named inventors of the '933 Patent.  They were personally involved in the prosecution of the '933 Patent application.  Their signatures appear on an inventor declaration under 37 C.F.R. § 1.63 in the prosecution history.  In that declaration, Messrs. Michaels, Timson, and Dervan "acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations. §1.56(a)."

62.     Richard C. Stevens is an attorney at the law firm of Stevens & Showalter.  Mr. Stevens was personally involved in the prosecution of the '933 Patent application.  Mr. Stevens' signature appears on the application transmittal form and other communications with the PTO in the prosecution history.

63.     Robert O. Groover, III, is an attorney at the law firm of Groover & Associates.  Mr. Groover was personally involved in the prosecution of the '933 Patent application.  Mr. Groover's signature appears on several communications with the PTO in the prosecution history of the '933 patent.

64.     On information and belief, one or more persons described in paragraphs 61-63 above (collectively, "the '933 Applicants"), in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent application, which renders the '933 Patent unenforceable.

65.     On information and belief, one or more of the '933 Applicants knew about, but never disclosed, material prior art during the prosecution of the '933 Patent application.  More

specifically, they knew about but intentionally and with deceptive intent failed to disclose material portions of the GSM Standard during the prosecution of the '933 Patent application, including GSM 2.17, entitled "Subscriber Identity Module Functional Characteristics." The '933 Applicants also failed to disclose GSM 2.01, 2.03, 2.06, 2.07, 2.30, 3.02, 4.01, 4.02, 4.03, 4.05, 4.06, 4.07, 4.08, 4.11, 4.22, and 7.01, all of which are material, non-cumulative portions of the GSM Standard. Those portions of the GSM Standard were not considered by the PTO during prosecution of the '976 Patent. Those portions of the GSM Standard were published before the alleged priority date of the application to which the '933 Patent claims priority.

66.     The prior art GSM Standard that the '933 Applicants failed to disclose to the PTO was material to the patentability of the '933 Patent. The '933 Applicants referred repeatedly to "GSM system[s]" in the specification of the '933 Patent, because such systems based on the GSM Standard were highly relevant to the subject matter they sought to claim. In fact, the '933 Applicants stated that their alleged invention was "particularly applicable to global telecommunication systems in which the mobile cellular telephone networks of various countries or areas communicate using a common standard," citing GSM as the primary example of such a system. '933 Patent, Col. 2, ll. 45-51; *see also, e.g.*, Figs. 1-2, and 4; Col. 3, ll. 11-13, 25-26, and 64-65. The '933 Applicants' statements regarding the particular applicability of their alleged invention to a GSM system alone establishes the materiality of the prior art undisclosed portions of the GSM Standard.

67.     The materiality of the undisclosed portions of the GSM Standard is also evidenced by their clear relation to the asserted claims. In particular, Claims 1-14, 16, and 20 of the '933 Patent are directed to a GSM-compatible telecommunications network. The

undisclosed portions of the GSM Standard also relate to a GSM-compatible telecommunications network, confirming the materiality of that art.

68.     On information and belief, one or more of the '933 Applicants had knowledge of the GSM Standard.  Applicants expressly suggested the applicability of their alleged invention to GSM systems.  On information and belief, the '933 Applicants were familiar with the details of the GSM Standard, which described the operation of the cited GSM systems, including the details of that prior art highly relevant to elements of Claims 1-14, and 16-20 of the '933 Patent.

69.     During the prosecution of the '933 Patent application, the PTO found that no prior art of record satisfied the claims of the '933 Patent.  However, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, the undisclosed GSM Standard anticipates or renders obvious all of the elements of Claims 1-14 and 16-20 as detailed in the Invalidity Chart for the '933 Patent by the GSM Solution, attached as Exhibit 2 to Defendants' Invalidity Contentions ("GSM Solution, Exhibit 2").  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '933 Patent claims, if any of the '933 Applicants had submitted the undisclosed portions of the GSM Standard to the examiner during the prosecution of the '933 Patent application, the examiner would have found the '933 Patent's claims unpatentable based on that prior art.

70.     The undisclosed portions of the GSM Standard are not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '933 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 2.  As the GSM Solution, Exhibit 2 demonstrates, the undisclosed portions of the GSM Standard are material to patentability of at least Claims 1-14 and 16-20 of the '933 Patent.  Because of the high materiality of the undisclosed portions of the GSM Standard, as

evidenced by the GSM Solution, Exhibit 2, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, the PTO would have found Claims 1-14 and 16-20 of the '933 Patent unpatentable had it known of those publications.

71.     The '933 Applicants' familiarity with the undisclosed portions of the GSM Standard, along with the high materiality of those references as set forth in the GSM Solution, Exhibit 2, demonstrates that one or more of the '933 Applicants intended to withhold those references during the prosecution of the '933 Patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '933 Patent unenforceable.

<u>The '933 Patent - Failure to Disclose GSM 3.40 Publication Date</u>

72.     Robert O. Groover, III, is an attorney at the law firm of Groover & Associates. Mr. Groover was personally involved in the prosecution of the '933 Patent application.  Mr. Groover's signature appears on several communications with the PTO in the prosecution history.

73.     On February 14, 2008, Mr. Groover submitted an Information Disclosure Statement ("IDS") to the PTO.  In the IDS, Mr. Groover cited GSM 3.40, Version 3.5.0.  This version of GSM 3.40 was published in 1992, and this date is prominently displayed on the cover page of that publication.  However, Mr. Groover failed to provide the date of this reference in the IDS or at any later time to the PTO.

74.     On page 2 of the office action dated April 24, 2008, the prosecuting examiner advised Mr. Groover that "The information disclosure statement filed on 2/14/2008 fails to comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because some of the cited documents (namely, documents no. 5, 6, 10, and 11) do not have their corresponding publication

dates.  It has been placed in the application file, but the information referred to therein has not been considered as to the merits."

75.     On May 6, 2009, the prosecuting examiner issued a Notice of Allowance.  In the attached statements, the examiner noted that "some of the cited documents were not provided with their publication dates."  The Notice of Allowance included a revised copy of the IDS, wherein the examiner indicated that GSM 3.40, Version 3.5.0 was not considered during prosecution.  On June 23, 2009, the PTO issued the '933 Patent; however, GSM 3.40 is not listed as a cited reference in the issued patent.

76.     On information and belief, Mr. Groover, in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent application, which renders the '933 Patent unenforceable.

77.     On information and belief, Mr. Groover knew that GSM 3.40 was published in 1992.  GSM 3.40 was published before the alleged priority date of the '933 Patent.  On information and belief, Mr. Groover purposefully failed to disclose the publication of GSM 3.40 with the intent to mislead the PTO.  As a result, Mr. Groover knew that it had not been considered by the prosecuting examiner and, upon information and belief, intended for it not to be considered by the examiner.  Otherwise, having been twice notified of the deficiency, Mr. Groover could have, at a minimum, filed a Request for Continued Examination, submitted the date for GSM 3.40, and allowed for the reference to be considered by the examiner.

78.     For the same reasons as discussed in paragraphs 66-67 above, the materiality of GSM 3.40 is demonstrated by the repeated referrals to GSM systems in the specification of the '933 Patent and by the relation between GSM 3.40 and the asserted claims.  AT&T Inc. realleges

and incorporates by reference the allegations of paragraphs 66-67 as though fully set forth herein.

79.     During the prosecution of the '933 Patent application, the PTO found that no prior art of record satisfied the claims of the '933 Patent.  However, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, GSM 3.40 anticipates or renders obvious all of the elements of Claims 1-14 and 16-20 as detailed in the GSM Solution, Exhibit 2.  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '933 Patent claims, if Mr. Groover had submitted the publication date of GSM 3.40 to the examiner during the prosecution of the '933 Patent, the examiner would have found the '933 Patent's claims unpatentable based on that prior art.

80.     GSM 3.40 is not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '933 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 2.  As Exhibit 2 demonstrates, GSM 3.40, the features of which, on information and belief, Mr. Groover had knowledge, is material to patentability of at least Claims 1-14 and 16-20 of the '933 Patent. Because of the high materiality of GSM 3.40, as evidenced by the GSM Solution, Exhibit 2, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, the PTO would have found Claims 1-14 and 16-20 of the '933 Patent unpatentable had it considered the publication.

81.     Applicants' knowledge of the publication date of GSM 3.40, along with the high materiality of this reference as set forth in the GSM Solution, Exhibit 2, demonstrates that Mr. Groover intended to withhold the publication date of this reference during the prosecution of the

'933 Patent application, and did so with intent to deceive the PTO.   This intentional and deceptive withholding constitutes inequitable conduct that renders the '933 Patent unenforceable.

<u>The '933 Patent - Intentional and Deceptive Misrepresentations</u>

82.     C. Scott Talbot is an attorney at the law firm of Cooley Goodward Kronish LLP. Mr. Talbot was personally involved in the prosecution of the '933 Patent Application.   Mr. Talbot's signature appears on several communications with the PTO in the prosecution history.

83.     On page 18 of the September 25, 2005 amendment and response to office action filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that in the prior art: "All message processing was handled by the handset.  This is evidenced by the GSM standard in effect at the time of the priority filing date of the present application (June 1994).   This standard (GSM 11.11 version 3.10.0 February 1992) was the only standard applicable to telecommunications systems with removable modules."  Contrary to Mr. Talbot's representation to the PTO, however, many other prior art GSM standards documents, including one or more of the withheld standards documents referenced above, were applicable to telecommunications systems with removable modules.

84.     On page 18 of the September 25, 2005 amendment and response to office action filed during prosecution of the '933 Patent Application, Mr. Talbot characterized the GSM prior art by representing that: "It was not until 1996 that the [GSM] standards were amended to allow for the messaging conduit to include programming information and for this functionality to provided [sic] in the SIM.  At the time the invention was made, the relevant standard not only specified a single format for messaging, it provided that the handset reads and analyzes header information in such messages."  Contrary to Mr. Talbot's representation to the PTO, however, the prior art portions of the GSM Standard, including one or more of the undisclosed portions of

the GSM Standard described above, disclosed messaging conduits that included programming information and also specified multiple formats for messaging.

85.     On pages 2-3 of the March 13, 2007 arguments in support of pre-appeal brief request for review filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that: "Further, the Examiner seems to apply the present state of the art, instead of the appropriate state of the art when the invention was made.  At the time of the priority filing date for the current application, the only standard applicable to telecommunications systems with removable modules was the GSM standard.  The relevant GSM standard (GSM 11.11 version 3.10.0 February 1992) specified a single format for messaging - there were no enhanced messages for communicating with the module."  Contrary to Mr. Talbot's representation to the PTO, however, there were many other portions of the GSM Standard relevant to messaging, including one or more undisclosed portions of the GSM Standard described above.

86.     On page 3 of the March 13, 2007 arguments in support of pre-appeal brief request for review filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that: "There was only one type of message (the SMS "text" message) and no analysis of the messages was performed in the module….  It was not until 1996, three years after the priority filing date, that the standards were amended to allow for the messaging conduit to include programming information and for this functionality to be provided to the SIM."  Contrary to Mr. Talbot's representation to the PTO, however, there were other types of messages disclosed in the GSM Standard, including one or more of the withheld portions of the GSM Standard referenced above.  Also, SMS messages in the GSM Standard were not limited to "text," and the GSM Standard allowed for messaging conduits that included programming information.

87.     On information and belief, Mr. Talbot, in breach of the duty of candor and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent Application, which renders the '933 Patent unenforceable.  On information and belief, Mr. Talbot committed inequitable conduct by making material misrepresentations to the PTO during prosecution of the '933 Patent Application, with an intent to mislead or deceive the prosecuting examiner.  On information and belief, Mr. Talbot knew that the representations described above were misleading.    Furthermore, on information and belief, Mr. Talbot knew that the misrepresentations described above were highly material to patentability.  Because of the high materiality of these misrepresentations, the PTO would have found at least Claims 1-14 and 16-20 of the '933 Patent unpatentable had Mr. Talbot not made those misrepresentations.  Those intentional and deceptive misrepresentations constitute inequitable conduct that renders the '933 Patent unenforceable.

## COUNTERCLAIMS

88.     Defendant AT&T Inc. brings the following counterclaims against Plaintiff Celltrace LLC:

89.     AT&T Inc. realleges and incorporates by reference the allegations of paragraphs 1-87 as though fully set forth herein.

## JURISDICTION AND VENUE

90.     This is an action for a declaration that each and every claim of United States Patent No. 6,011,976 (the "'976 Patent") and United States Patent No. 7,511,933 (the "'933 Patent") is invalid, unenforceable and not infringed pursuant to the Patent Laws of the United States, 35 U.S.C. § 101, *et seq*.  Accordingly, subject matter jurisdiction of this Court exists

under the Federal Declaratory Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331 and 1338(a).

91.     An actual, substantial and continuing justiciable controversy exists between AT&T Inc. and Plaintiff with respect to which AT&T Inc. requires a declaration of its rights by this Court.  Specifically, the controversy relates to the invalidity, unenforceability, and non-infringement of the '976 Patent and the '933 Patent and to Plaintiff's right to threaten and/or maintain a suit against AT&T Inc. for alleged infringement of the '976 Patent and the '933 Patent.

92.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b).

## DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '976 PATENT

93.     AT&T Inc. realleges and incorporates by reference the allegations of paragraphs 88-92 as though fully set forth herein.

94.     This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the '976 Patent.

95.     Plaintiff alleges that AT&T Inc. has and is infringing directly and/or by inducing or contributing to the infringement of one or more claims of the '976 Patent, that such alleged infringement has thereby damaged Plaintiff and, unless enjoined, will continue to damage Plaintiff.

96.     AT&T Inc. has not infringed, contributed to the infringement of, or induced others to infringe, and does not infringe, contribute to the infringement of, or induce others to infringe, any valid and enforceable claim of the '976 Patent, either directly or indirectly, either literally or under the doctrine of equivalents.

97.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between AT&T Inc. and Plaintiff as to whether AT&T Inc. has infringed or infringes any valid and enforceable claim of the '976 Patent.

98.     AT&T Inc. requests a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in paragraphs 93-97 above.  Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties in this regard.

## DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '933 PATENT

99.     AT&T Inc. realleges and incorporates by reference the allegations of paragraphs 88-98 as though fully set forth herein.

100.    This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the '933 Patent.

101.    Plaintiff alleges that AT&T Inc. has and is infringing directly and/or by inducing or contributing to the infringement of one or more claims of the '933 Patent, that such alleged infringement has thereby damaged Plaintiff and, unless enjoined, will continue to damage Plaintiff.

102.    AT&T Inc. has not infringed, contributed to the infringement of, or induced others to infringe, and does not infringe, contribute to the infringement of, or induce others to infringe, any valid and enforceable claim of the '933 Patent, either directly or indirectly, either literally or under the doctrine of equivalents.

103.    There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between AT&T Inc. and Plaintiff as to whether AT&T Inc. has infringed or infringes any valid and enforceable claim of the '933 Patent.

104.    AT&T Inc. requests a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in paragraphs 99-103 above.  Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties in this regard.

### DECLARATORY JUDGMENT
### OF INVALIDITY OF THE '976 PATENT

105.    AT&T Inc. realleges and incorporates by reference the allegations of paragraphs 88-104 as though fully set forth herein.

106.    This is an action for declaratory judgment of invalidity of any and all claims of the '976 Patent.

107.    The '976 Patent, and each claim thereof, is invalid for failure to comply with one or more of the requirements of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112.

108.    There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between AT&T Inc. and Plaintiff as to whether there exists any valid claim of the '976 Patent.

109.    AT&T Inc. requests a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in paragraphs 105-108 above.  Such a determination and declaration are necessary and appropriate at this time so the parties may ascertain their respective rights and duties in this regard.

### DECLARATORY JUDGMENT
### OF INVALIDITY OF THE '933 PATENT

110.    AT&T Inc. realleges and incorporates by reference the allegations of paragraphs 88-109 as though fully set forth herein.

111.    This is an action for declaratory judgment of invalidity of any and all claims of the '933 Patent.

112.    The '933 Patent, and each claim thereof, is invalid for failure to comply with one or more of the requirements of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

113.    There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between AT&T Inc. and Plaintiff as to whether there exists any valid claim of the '933 Patent.

114.    AT&T Inc. requests a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in paragraphs 110-113 above.  Such a determination and declaration are necessary and appropriate at this time so the parties may ascertain their respective rights and duties in this regard.

### DECLARATORY JUDGMENT
### OF UNENFORCEABILITY OF THE '976 PATENT

115.    AT&T Inc. realleges and incorporates by reference the allegations of paragraphs 88-114 as though fully set forth herein.

116.    AT&T Inc. realleges and incorporates by reference the allegations in its Fourteenth Defense as recited in paragraphs 49-87 above.

117.    The '976 Patent is unenforceable because one or more persons involved in the prosecution of the '976 Patent application committed inequitable conduct by failing to disclose material prior art and/or making material misrepresentations to the PTO with an intent to deceive.

118.    There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between AT&T Inc. and Plaintiff as to whether there exists any enforceable claim of the '976 Patent.

119.    AT&T Inc. requests a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in paragraphs 115-118 above.  Such a determination and declaration are necessary and appropriate at this time so the parties may ascertain their respective rights and duties in this regard.

### DECLARATORY JUDGMENT
### OF UNENFORCEABILITY OF THE '933 PATENT

120.    AT&T Inc. realleges and incorporates by reference the allegations of paragraphs 88-119 as though fully set forth herein.

121.    AT&T Inc. realleges and incorporates by reference the allegations in its Fourteenth Defense as recited in paragraphs 49-87 above.

122.    The '933 Patent is unenforceable because one or more persons involved in the prosecution of the '933 Patent application committed inequitable conduct by failing to disclose material prior art and/or making material misrepresentations to the PTO with an intent to deceive.

123.    There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between AT&T Inc. and Plaintiff as to whether there exists any enforceable claim of the '933 Patent.

124.    AT&T Inc. requests a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in paragraphs 120-123 above.  Such a determination and declaration are necessary and appropriate at this time so the parties may ascertain their respective rights and duties in this regard.

## PRAYER FOR RELIEF

AT&T Inc. prays for judgment as follows:

A.       That this Court fully and finally dismiss Plaintiff's claims against AT&T Inc. and order that Plaintiff take nothing from AT&T Inc.;

B.       That this Court find that AT&T Inc. has not infringed, in any manner, any claim of the '976 Patent or any claim of the '933 Patent;

C.       That this Court issue a declaration that the manufacture, use, sale, and/or offer for sale of AT&T Inc.'s systems, products, methods, and services does not infringe, directly or indirectly, any claim of the '976 Patent or any claim of the '933 Patent;

D.       That this Court find that the '976 Patent and the '933 Patent are invalid and/or unenforceable pursuant to Title 35 of the United States Code;

E.       That this Court issue a declaration that the claims of the '976 Patent and the '933 Patent are invalid and/or unenforceable;

F.       That this Court award permanent injunctive relief enjoining Plaintiff from taking any actions or making any statements based upon the '976 Patent or the '933 Patent that are inconsistent with AT&T Inc.'s right to make, use, offer to sell, and/or sell any of its systems, products, methods, and services;

G.       That this Court award AT&T Inc. all of its costs of this action;

H.       That this Court find that this is an exceptional case and award AT&T Inc. its attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise; and

I.       That this Court grant AT&T Inc. such other and further relief as the Court may deem just and proper.

Dated:  March 12, 2010                          Respectfully submitted,

                                                */s/ Christopher W. Kennerly*
                                                Christopher W. Kennerly
                                                State Bar No. 00795077
                                                Email:  chris.kennerly@bakerbotts.com
                                                Bryant C. Boren, Jr., Lead Attorney
                                                State Bar No. 02664100
                                                Email:  bryant.c.boren@bakerbotts.com
                                                Christopher W. Kennerly
                                                State Bar No. 00795077
                                                Email:  chris.kennerly@bakerbotts.com
                                                Kevin E. Cadwell
                                                State Bar No. 24036304
                                                kevin.cadwell@bakerbotts.com

                                                **BAKER BOTTS L.L.P.**
                                                620 Hansen Way
                                                Palo Alto, California 94304
                                                650.739.7501 – Voice
                                                650.739.7601 – Facsimile

                                                **ATTORNEYS FOR DEFENDANT
                                                AT&T INC.**

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on March 12, 2010, all counsel of record were served with a copy of this document either: (1) by the Court's Electronic Filing System, pursuant to Local Rule CV-5(a)(3)(A), if they have consented to electronic service, or (2) by regular mail, pursuant to Local Rule CV-5(d), if they have not so consented.

*/s/ Christopher W. Kennerly*         
Christopher W. Kennerly
