**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| CELLTRACE LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>AT&T, INC., AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC; T-MOBILE USA, INC.; ALLTEL CORPORATION; ALLTEL CORPORATION, LLC; ETEX TELEPHONE COOPERATIVE INC.; ETEX COMMUNICATIONS, L.P.; SPRINT NEXTEL CORPORATION; SPRINT SPECTRUM L.P.; SPRINT COMMUNICATIONS COMPANY L.P.; NEXTEL OPERATIONS, INC.; NEXTEL WEST CORP.; NEXTEL OF CALIFORNIA, INC.; NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC.; NEXTEL OF NEW YORK, INC.; NEXTEL SOUTH CORP.; NEXTEL OF TEXAS, INC.; UNITED STATES CELLULAR CORPORATION; and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>        Defendants. | Case No. 6:09-cv-294 (LED)<br><br><br><br>**ALLTEL CORPORATION'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br><br>**[JURY TRIAL DEMANDED]** |

**DEFENDANT ALLTEL CORPORATION'S FIRST AMENDED ANSWER TO**
**PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Alltel Corporation, by way of First Amended Answer to Plaintiff's

Complaint, says:

## I.  THE PARTIES

1.      Alltel Corporation lacks information sufficient to form a belief as to the truth of

the allegations contained in paragraph 1.

2.      Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.

3.      Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

4.      Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 4.

5.      Alltel Corporation admits that it is a Delaware corporation with its principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.  Alltel Corporation is the sole member of Alltel Communications, LLC ("Alltel Communications").  On January 9, 2009, Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") acquired Alltel Corporation indirectly from Atlantis Holdings LLC pursuant to an Agreement and Plan of Merger.  As a result of the acquisition, Alltel Corporation and its subsidiaries are indirect, wholly owned subsidiaries of Verizon Wireless.

6.      Alltel Corporation refers to the Answer filed by Alltel Communications at paragraph 6 and incorporates by reference the statements therein.

7.      Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.      Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 8.

9.      Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 9.

10.      Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 10.

11.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

12.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 12.

13.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 13.

14.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 14.

15.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 15.

16.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 16.

17.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.

18.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 18.

19.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.

20.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21.     Alltel Corporation lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.

22.     Alltel Corporation refers to the Answer filed by Verizon Wireless at paragraph 22 and incorporates by reference the statements therein.

## II. JURISDICTION & VENUE

23.     Alltel Corporation admits that this action for infringement purports to arise under the Patent Laws of the United States, Title 35, United States Code.  Alltel Corporation admits that this Court has jurisdiction over the subject matter based upon the Patent Laws of the United States, Title 35, United States Code, and by Title 28, United States Code, § 1331 and § 1338(a).

24.     Paragraph 24 contains conclusions of law and not averments of fact to which an answer is required, but insofar as an answer may be deemed required, Alltel Corporation admits only that based on the allegations in the Complaint, Alltel Corporation is subject to the personal jurisdiction of this Court for this matter, and that venue may be established in this Court under 28 U.S.C. § 1391.  Alltel Corporation denies any remaining allegations contained in paragraph 24 to the extent they relate to Alltel Corporation, refers to the Answers filed by Verizon Wireless and Alltel Communications at paragraph 24 and incorporates by reference the statements therein, and lacks information sufficient to form a belief as to the truth of any remaining allegations in paragraph 24 to the extent they relate to other defendants.

25.     Alltel Corporation denies the allegations contained in paragraph 25 to the extent they relate to Alltel Corporation, refers to the Answers filed by Verizon Wireless and Alltel Communications at paragraph 25 and incorporates by reference the statements therein, and lacks information sufficient to form a belief as to the truth of any remaining allegations in paragraph 25 to the extent they relate to other defendants.

## III. PATENT INFRINGEMENT

26.     Alltel Corporation admits that United States Patent No. 6,011,976 ("the '976 patent") states as its title "TELECOMMUNICATIONS SYSTEM WITH VALUE ADDED SERVICE DIRECTORY AND AN INTEGRATED CIRCUIT MODULE THEREFOR" and that Exhibit A to the Complaint appears to be a copy of the '976 patent.  Alltel Corporation admits

that United States Patent No. 7,551,933 ("the '933 patent") states as its title

"TELECOMMUNICATIONS SYSTEM" and that Exhibit B to the Complaint appears to be a

copy of the '933 patent.  The remainder of paragraph 26 contains conclusions of law and not

averments of fact to which an answer is required, but insofar as an answer may be deemed

required, Alltel Corporation lacks information sufficient to form a belief as to the truth of the

allegations contained in paragraph 26.

27.     Alltel Corporation denies the allegations contained in paragraph 27 to the extent

they relate to Alltel Corporation, refers to the Answers filed by Verizon Wireless and Alltel

Communications at paragraph 27 and incorporates by reference the statements therein, and lacks

information sufficient to form a belief as to the truth of the allegations in paragraph 27 to the

extent they relate to other defendants.

### COUNT I – INFRINGEMENT OF THE '976 PATENT

28.     Alltel Corporation repeats and re-asserts its responses to paragraphs 1-27 above.

29.     Alltel Corporation lacks information sufficient to form a belief as to the truth of

the allegations contained in paragraph 29.

30.     Paragraph 30 contains conclusions of law and not averments of fact to which an

answer is required, but insofar as an answer may be deemed required, Alltel Corporation lacks

information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

### COUNT II – INFRINGEMENT OF THE '933 PATENT

31.     Alltel Corporation repeats and re-asserts its responses to paragraphs 1-30 above.

32.     Alltel Corporation denies the allegations contained in paragraph 32 to the extent

they relate to Alltel Corporation, refers to the Answers filed by Verizon Wireless and Alltel

Communications at paragraph 32 and incorporates by reference the statements therein, and lacks

information sufficient to form a belief as to the truth of the allegations in paragraph 32 to the extent they relate to other defendants.

33.     Paragraph 33 contains conclusions of law and not averments of fact to which an answer is required, but insofar as an answer may be deemed required, Alltel Corporation denies the allegations contained in paragraph 33 to the extent they relate to Alltel Corporation, refers to the Answers filed by Verizon Wireless and Alltel Communications at paragraph 33 and incorporates by reference the statements therein, and lacks information sufficient to form a belief as to the truth of the allegations in paragraph 33 to the extent they relate to other defendants.

## IV.  DEMAND FOR JURY TRIAL

34.     Alltel Corporation agrees with Celltrace's demand for a jury trial.

35.     To the extent not expressly admitted, Alltel Corporation denies each and every allegation in the Complaint.

## V.  PRAYER FOR RELIEF

36.     Alltel Corporation denies that Celltrace is entitled to any of the relief sought in its prayer for relief.

## VI.  AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

37.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

38.     The claims of the '933 patent are invalid and/or unenforceable under one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

### THIRD AFFIRMATIVE DEFENSE

39.     Alltel Corporation's actions with respect to the use, sale or offer for sale of services or products or any other accused activity do not directly or indirectly infringe, contribute to the infringement or induce the infringement of any properly construed, valid and/or enforceable claims of the '933 patent.

### FOURTH AFFIRMATIVE DEFENSE

40.     As and for a separate affirmative defense, Alltel Corporation alleges on information and belief that any claim for damages for patent infringement by Celltrace is limited by 35 U.S.C. § 287 to only those damages occurring after proper and sufficient notice of infringement to Alltel Corporation.

### FIFTH AFFIRMATIVE DEFENSE

41.     Celltrace's claims are barred by equitable doctrines including the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

42.     Celltrace's claims for relief are barred and the asserted claims of the '933 patent are unenforceable due to prosecution laches.  Celltrace submitted the claims that ultimately became the asserted '933 patent claims for prosecution on or after January 31, 2008, almost fifteen years after Celltrace's asserted June 15, 1993 priority date.  This delay was unreasonable and severely prejudicial to Alltel Corporation.

43.     In particular, Celltrace can cite no justification for why the asserted '933 claims were not presented and prosecuted in a more timely fashion.  Moreover, Alltel Corporation may be unable to locate and identify additional prior art that predates the filing of the patent application.  Many of the prior art systems were widely used in the early 1990's, but finding them and locating their supporting documentation today, twenty years later, is challenging

because of Celltrace's delay.  Additionally, the revenues which Celltrace claims are subject to an infringement claim have been unnecessarily increased by the unreasonable delay.

44.     Celltrace's unreasonable delay constitutes prosecution laches that renders the '933 patent unenforceable.

## SEVENTH AFFIRMATIVE DEFENSE

45.     Upon information and belief, one ore more asserted claims of the '933 patent is unenforceable due to inequitable conduct by or on behalf of Plaintiff or its representatives, or by or on behalf of a predecessor in interest of Plaintiff or its representatives, to the United States Patent and Trademark Office during the prosecution of the application for the '933 patent.  Alltel Corporation incorporates herein by reference the averments set forth below in the Counterclaim for Unenforceability Due to Inequitable Conduct.

46.     Alltel Corporation reserves the right to assert affirmatively any other matter that constitutes an affirmative defense under applicable laws and rules.

## VII.  COUNTERCLAIMS

### The Parties

47.     Based on assertions by Celltrace, Celltrace is a limited liability company organized and existing under the laws of the State of Texas with its principal places of business located in Newport Beach, California, and Frisco, Texas.

48.     United States Patent No. 7,551,933 ("the '933 patent") lists Celltrace as the sole assignee.

### Jurisdiction and Venue

49.     This Court has subject matter over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

50.     Celltrace is subject to the personal jurisdiction of this Court.

51.     The minimum requisites for venue under 35 U.S.C. § 1391 exist in this district, but venue is more properly established in a district that would better serve the convenience of the witnesses and parties and the interests of justice.

### COUNTERCLAIM COUNT I
### (Invalidity of U.S. Patent No. 7,551,933)

52.     Alltel Corporation realleges and incorporates by reference the allegations in paragraphs 1-51 above.

53.     Celltrace has asserted that Alltel Corporation infringes the '933 patent.

54.     An actual controversy exists between Celltrace and Alltel Corporation regarding the validity of the '933 patent.

55.     All claims of the '933 patent are invalid for failing to meet one or more conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

### COUNTERCLAIM COUNT II
### (Non-infringement of U.S. Patent No. 7,551,933)

56.     Alltel Corporation realleges and incorporates by reference the allegations in paragraphs 1-55 above.

57.     Celltrace has asserted that Alltel Corporation infringes the '933 patent.

58.     An actual controversy exists between Celltrace and Alltel Corporation regarding infringement of the '933 patent.

59.     Alltel Corporation has not infringed and does not infringe any valid, enforceable claim of the '933 patent literally, directly, contributorily, by way of inducement, and/or under the doctrine of equivalents.

### COUNTERCLAIM COUNT III
### (Unenforceability Due to Prosecution Laches)

60.     Alltel Corporation realleges and incorporates by reference the allegations in paragraphs 1-59 above.

61.     Celltrace has asserted that Alltel Corporation infringes the '933 patent.

62.     An actual controversy exists between Celltrace and Alltel Corporation regarding the enforceability of the '933 patent.

63.     Celltrace's claims for relief are barred and the asserted claims of the '933 patent are unenforceable due to prosecution laches.  Celltrace submitted the claims that ultimately became the asserted '933 patent claims for prosecution on or after January 31, 2008, almost fifteen years after Celltrace's asserted June 15, 1993 priority date.  This delay was unreasonable and severely prejudicial to Alltel Corporation.

64.     In particular, Celltrace can cite no justification for why the asserted '933 claims were not presented and prosecuted in a more timely fashion.  Moreover, Alltel Corporation may be unable to locate and identify additional prior art that predates the filing of the patent application.  Many of the prior art systems were widely used in the early 1990's, but finding them and locating their supporting documentation today, twenty years later, is challenging because of Celltrace's delay.  Additionally, the revenues which Celltrace claims are subject to an infringement claim have been unnecessarily increased by the unreasonable delay.

65.     Celltrace's unreasonable delay constitutes prosecution laches that renders the '933 patent unenforceable.

**COUNTERCLAIM COUNT IV**
**(Unenforceability Due to Inequitable Conduct)**

66.     Alltel Corporation realleges and incorporates by reference the allegations in paragraphs 1-65 above.

67.     The '976 Patent and the '933 Patent are unenforceable due to inequitable conduct. On information and belief, one or more persons involved in the prosecution of the applications leading to these patents violated their duty of candor and good faith to the United States Patent

10

and Trademark Office (the "PTO") by intentionally and deceptively failing to disclose to the PTO information material to patentability of the '976 and the '933 Patents.

68.     Alltel Corporation asserts this inequitable conduct defense with respect to the '976 and the '933 Patents based on the information presently available to it.  Because discovery is still in progress, Alltel Corporation reserves the right to amend or supplement this defense as appropriate.

<u>The '976 Patent - Failure to Disclose the GSM Standard</u>

69.     Wayne David Michaels, Anthony Richard Timson, and Aden William Dervan are the named inventors of the '976 Patent.  They were personally involved in the prosecution of the '976 Patent application.  Their signatures appear on an inventor declaration under 37 C.F.R. § 1.63 in the prosecution history.  In the declaration, Messrs. Michaels, Timson, and Dervan "acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations. §1.56(a)."  Submission of Missing Parts of Application, February 13, 1996, at 2.

70.     Richard C. Stevens was an attorney at the law firm formerly known as Killworth Gottman Hagan & Schaeff and is now an attorney at the law firm of Stevens & Showalter.  Mr. Stevens was personally involved in the prosecution of the '976 Patent application.  Mr. Stevens' signature appears on the application transmittal form and other communications with the PTO in the prosecution history.

71.     On information and belief, one or more persons described in paragraphs 69-70 above (collectively, "the '976 Applicants"), in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '976 Patent application, which renders the '976 Patent unenforceable.

72.     On information and belief, one or more of the '976 Applicants knew about, but never disclosed, material prior art during the prosecution of the '976 Patent application.  More specifically, they knew about but intentionally and with deceptive intent failed to disclose material portions of the GSM Standard during the prosecution of the '976 Patent application, including at least GSM 2.17, 3.40, 3.41, and 11.11.  Those portions of the GSM Standard were not considered by the PTO during prosecution of the '976 Patent application.  Those portions of the GSM Standard were published before the alleged priority date of the '976 Patent.

73.     The prior art portions of the GSM Standard the '976 Applicants failed to disclose to the PTO were material to patentability of the '976 Patent.  The '976 Applicants referred repeatedly to "GSM system[s]" in the specification of the '976 Patent, because such systems based on the GSM Standard were highly relevant to the subject matter they sought to claim.  In fact, the '976 Applicants stated that their alleged invention was "particularly applicable to global telecommunication systems in which the mobile cellular telephone networks of various countries or areas communicate using a common standard," citing systems implementing the GSM Standard as the primary example of such a system.  '976 Patent, Col. 2, ll. 46-49; s*ee also e.g*., Figs. 1-2, and 4; Col. 3, ll. 10-14, 19-20, and 57-58.  The '976 Applicants' statements regarding the particular applicability of their alleged invention to a GSM system alone establishes the materiality of the prior art GSM Standard.

74.     On information and belief, one or more of the '976 Applicants had knowledge of the GSM Standard described above.  The '976 Patent itself suggested that GSM used a common standard.  '976 Patent, Col. 2, ll. 46-51.  As discussed above, the '976 Applicants also expressly suggested the applicability of their alleged invention to GSM systems.  On information and belief, the '976 Applicants were familiar with the details of the GSM Standard, which described details highly relevant to the elements of Claims 2-5, 10-14, and 16-18 of the '976 Patent.

12

75.     During the prosecution of the '976 Patent application, the PTO found that no prior art of record satisfied the claims of the '976 Patent.  However, at least under Celltrace's apparent interpretations regarding the '976 Patent claims,[1] the GSM Standard anticipates or renders obvious all of the elements of Claims 2-5, 10-14, and 16-18 as detailed in the Invalidity Chart for the '976 Patent by the GSM Solution, attached as Exhibit 1 to Defendants' Invalidity Contentions ("GSM Solution, Exhibit 1").  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '976 Patent claims, if any of the '976 Applicants had submitted the GSM Standard to the examiner during the prosecution of the '976 Patent, the examiner would have found the '976 Patent's claims unpatentable based on that prior art.

76.     The GSM Standard is not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '976 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 1.  As the GSM Solution, Exhibit 1 demonstrates, the GSM Standard is material to patentability of at least Claims 2-5, 10-14, and 16-18 of the '976 Patent.  Because of the high materiality of the GSM Standard, as evidenced by the GSM Solution, Exhibit 1, at least under Celltrace's apparent interpretations regarding the '976 Patent claims, the PTO would have found Claims 2-5, 10-14, and 16-18 unpatentable had it known of the GSM Standard.

77.     Applicants' familiarity with the GSM Standard, along with the high materiality of that reference as set forth in the GSM Solution, Exhibit 1, demonstrates that one or more of the '976 Applicants intended to withhold the GSM Standard during the prosecution of the '976 Patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '976 Patent unenforceable.

---

[1] Nothing in this pleading is an admission by Alltel Corporation that any of Plaintiff's interpretations or allegations is correct.

<u>The '933 Patent - Related Applications Unenforceable</u>

78.     As described in paragraphs 69-77 above, on information and belief, one or more persons involved in the prosecution of the '976 Patent application, in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '976 Patent application.  This inequitable conduct renders the '933 Patent unenforceable because the '933 Patent is a child of the '976 Patent.

<u>The '933 Patent - Failure to Disclose GSM 2.17 and Other Portions of the GSM Standard</u>

79.     Wayne David Michaels, Anthony Richard Timson, and Aden William Dervan are the named inventors of the '933 Patent.  They were personally involved in the prosecution of the '933 Patent application.  Their signatures appear on an inventor declaration under 37 C.F.R. § 1.63 in the prosecution history.  In that declaration, Messrs. Michaels, Timson, and Dervan "acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations. §1.56(a)."

80.     Richard C. Stevens is an attorney at the law firm of Stevens & Showalter.  Mr. Stevens was personally involved in the prosecution of the '933 Patent application.  Mr. Stevens' signature appears on the application transmittal form and other communications with the PTO in the prosecution history.

81.     Robert O. Groover, III, is an attorney at the law firm of Groover & Associates. Mr. Groover was personally involved in the prosecution of the '933 Patent application.  Mr. Groover's signature appears on several communications with the PTO in the prosecution history of the '933 patent.

82.     On information and belief, one or more persons described in paragraphs 79-81 above (collectively, "the '933 Applicants"), in breach of the duty of candor and good faith, and

14

with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent application, which renders the '933 Patent unenforceable.

83.     On information and belief, one or more of the '933 Applicants knew about, but never disclosed, material prior art during the prosecution of the '933 Patent application.  More specifically, they knew about but intentionally and with deceptive intent failed to disclose material portions of the GSM Standard during the prosecution of the '933 Patent application, including GSM 2.17, entitled "Subscriber Identity Module Functional Characteristics."  The '933 Applicants also failed to disclose GSM 2.01, 2.03, 2.06, 2.07, 2.30, 3.02, 4.01, 4.02, 4.03, 4.05, 4.06, 4.07, 4.08, 4.11, 4.22, and 7.01, all of which are material, non-cumulative portions of the GSM Standard.  Those portions of the GSM Standard were not considered by the PTO during prosecution of the '976 Patent.  Those portions of the GSM Standard were published before the alleged priority date of the application to which the '933 Patent claims priority.

84.     The prior art GSM Standard that the '933 Applicants failed to disclose to the PTO was material to the patentability of the '933 Patent.  The '933 Applicants referred repeatedly to "GSM system[s]" in the specification of the '933 Patent, because such systems based on the GSM Standard were highly relevant to the subject matter they sought to claim.  In fact, the '933 Applicants stated that their alleged invention was "particularly applicable to global telecommunication systems in which the mobile cellular telephone networks of various countries or areas communicate using a common standard," citing GSM as the primary example of such a system.  '933 Patent, Col. 2, ll. 45-51; *see also, e.g.*, Figs. 1-2, and 4; Col. 3, ll. 11-13, 25-26, and 64-65.  The '933 Applicants' statements regarding the particular applicability of their alleged invention to a GSM system alone establishes the materiality of the prior art undisclosed portions of the GSM Standard.

85.     The materiality of the undisclosed portions of the GSM Standard is also evidenced by their clear relation to the asserted claims.  In particular, Claims 1-14, 16, and 20 of the '933 Patent are directed to a GSM-compatible telecommunications network.  The undisclosed portions of the GSM Standard also relate to a GSM-compatible telecommunications network, confirming the materiality of that art.

86.     On information and belief, one or more of the '933 Applicants had knowledge of the GSM Standard.  Applicants expressly suggested the applicability of their alleged invention to GSM systems.  On information and belief, the '933 Applicants were familiar with the details of the GSM Standard, which described the operation of the cited GSM systems, including the details of that prior art highly relevant to elements of Claims 1-14, and 16-20 of the '933 Patent.

87.     During the prosecution of the '933 Patent application, the PTO found that no prior art of record satisfied the claims of the '933 Patent.  However, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, the undisclosed GSM Standard anticipates or renders obvious all of the elements of Claims 1-14 and 16-20 as detailed in the Invalidity Chart for the '933 Patent by the GSM Solution, attached as Exhibit 2 to Defendants' Invalidity Contentions ("GSM Solution, Exhibit 2").  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '933 Patent claims, if any of the '933 Applicants had submitted the undisclosed portions of the GSM Standard to the examiner during the prosecution of the '933 Patent application, the examiner would have found the '933 Patent's claims unpatentable based on that prior art.

88.     The undisclosed portions of the GSM Standard are not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '933 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 2.  As the GSM Solution, Exhibit 2 demonstrates, the undisclosed portions of

the GSM Standard are material to patentability of at least Claims 1-14 and 16-20 of the '933

Patent.  Because of the high materiality of the undisclosed portions of the GSM Standard, as

evidenced by the GSM Solution, Exhibit 2, at least under Celltrace's apparent interpretations

regarding the '933 Patent claims, the PTO would have found Claims 1-14 and 16-20 of the '933

Patent unpatentable had it known of those publications.

89.     The '933 Applicants' familiarity with the undisclosed portions of the GSM

Standard, along with the high materiality of those references as set forth in the GSM Solution,

Exhibit 2, demonstrates that one or more of the '933 Applicants intended to withhold those

references during the prosecution of the '933 Patent application, and did so with intent to deceive

the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders

the '933 Patent unenforceable.

<u>The '933 Patent - Failure to Disclose GSM 3.40 Publication Date</u>

90.     Robert O. Groover, III, is an attorney at the law firm of Groover & Associates.

Mr. Groover was personally involved in the prosecution of the '933 Patent application.  Mr.

Groover's signature appears on several communications with the PTO in the prosecution history.

91.     On February 14, 2008, Mr. Groover submitted an Information Disclosure

Statement ("IDS") to the PTO.  In the IDS, Mr. Groover cited GSM 3.40, Version 3.5.0.  This

version of GSM 3.40 was published in 1992, and this date is prominently displayed on the cover

page of that publication.  However, Mr. Groover failed to provide the date of this reference in the

IDS or at any later time to the PTO.

92.     On page 2 of the office action dated April 24, 2008, the prosecuting examiner

advised Mr. Groover that "The information disclosure statement filed on 2/14/2008 fails to

comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because some of the cited

documents (namely, documents no. 5, 6, 10, and 11) do not have their corresponding publication

dates.  It has been placed in the application file, but the information referred to therein has not been considered as to the merits."

93.     On May 6, 2009, the prosecuting examiner issued a Notice of Allowance.  In the attached statements, the examiner noted that "some of the cited documents were not provided with their publication dates."  The Notice of Allowance included a revised copy of the IDS, wherein the examiner indicated that GSM 3.40, Version 3.5.0 was not considered during prosecution.  On June 23, 2009, the PTO issued the '933 Patent; however, GSM 3.40 is not listed as a cited reference in the issued patent.

94.     On information and belief, Mr. Groover, in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent application, which renders the '933 Patent unenforceable.

95.     On information and belief, Mr. Groover knew that GSM 3.40 was published in 1992.  GSM 3.40 was published before the alleged priority date of the '933 Patent.  On information and belief, Mr. Groover purposefully failed to disclose the publication of GSM 3.40 with the intent to mislead the PTO.  As a result, Mr. Groover knew that it had not been considered by the prosecuting examiner and, upon information and belief, intended for it not to be considered by the examiner.  Otherwise, having been twice notified of the deficiency, Mr. Groover could have, at a minimum, filed a Request for Continued Examination, submitted the date for GSM 3.40, and allowed for the reference to be considered by the examiner.

96.     For the same reasons as discussed in paragraphs 84-85 above, the materiality of GSM 3.40 is demonstrated by the repeated referrals to GSM systems in the specification of the '933 Patent and by the relation between GSM 3.40 and the asserted claims.  Alltel Corporation realleges and incorporates by reference the allegations of paragraphs 84-85 as though fully set forth herein.

97.     During the prosecution of the '933 Patent application, the PTO found that no prior art of record satisfied the claims of the '933 Patent.  However, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, GSM 3.40 anticipates or renders obvious all of the elements of Claims 1-14 and 16-20 as detailed in the GSM Solution, Exhibit 2.  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '933 Patent claims, if Mr. Groover had submitted the publication date of GSM 3.40 to the examiner during the prosecution of the '933 Patent, the examiner would have found the '933 Patent's claims unpatentable based on that prior art.

98.     GSM 3.40 is not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '933 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 2.  As Exhibit 2 demonstrates, GSM 3.40, the features of which, on information and belief, Mr. Groover had knowledge, is material to patentability of at least Claims 1-14 and 16-20 of the '933 Patent. Because of the high materiality of GSM 3.40, as evidenced by the GSM Solution, Exhibit 2, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, the PTO would have found Claims 1-14 and 16-20 of the '933 Patent unpatentable had it considered the publication.

99.     Applicants' knowledge of the publication date of GSM 3.40, along with the high materiality of this reference as set forth in the GSM Solution, Exhibit 2, demonstrates that Mr. Groover intended to withhold the publication date of this reference during the prosecution of the '933 Patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '933 Patent unenforceable.

<u>The '933 Patent - Intentional and Deceptive Misrepresentations</u>

100.    C. Scott Talbot is an attorney at the law firm of Cooley Goodward Kronish LLP. Mr. Talbot was personally involved in the prosecution of the '933 Patent Application.  Mr. Talbot's signature appears on several communications with the PTO in the prosecution history.

101.    On page 18 of the September 25, 2005 amendment and response to office action filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that in the prior art: "All message processing was handled by the handset.  This is evidenced by the GSM standard in effect at the time of the priority filing date of the present application (June 1994).  This standard (GSM 11.11 version 3.10.0 February 1992) was the only standard applicable to telecommunications systems with removable modules."  Contrary to Mr. Talbot's representation to the PTO, however, many other prior art GSM standards documents, including one or more of the withheld standards documents referenced above, were applicable to telecommunications systems with removable modules.

102.    On page 18 of the September 25, 2005 amendment and response to office action filed during prosecution of the '933 Patent Application, Mr. Talbot characterized the GSM prior art by representing that: "It was not until 1996 that the [GSM] standards were amended to allow for the messaging conduit to include programming information and for this functionality to provided [sic] in the SIM.  At the time the invention was made, the relevant standard not only specified a single format for messaging, it provided that the handset reads and analyzes header information in such messages."  Contrary to Mr. Talbot's representation to the PTO, however, the prior art portions of the GSM Standard, including one or more of the undisclosed portions of the GSM Standard described above, disclosed messaging conduits that included programming information and also specified multiple formats for messaging.

103.    On pages 2-3 of the March 13, 2007 arguments in support of pre-appeal brief request for review filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that: "Further, the Examiner seems to apply the present state of the art, instead of the appropriate state of the art when the invention was made.  At the time of the priority filing date for the current application, the only standard applicable to telecommunications systems with removable modules was the GSM standard.  The relevant GSM standard (GSM 11.11 version 3.10.0 February 1992) specified a single format for messaging - there were no enhanced messages for communicating with the module."  Contrary to Mr. Talbot's representation to the PTO, however, there were many other portions of the GSM Standard relevant to messaging, including one or more undisclosed portions of the GSM Standard described above.

104.    On page 3 of the March 13, 2007 arguments in support of pre-appeal brief request for review filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that: "There was only one type of message (the SMS "text" message) and no analysis of the messages was performed in the module….  It was not until 1996, three years after the priority filing date, that the standards were amended to allow for the messaging conduit to include programming information and for this functionality to be provided to the SIM."  Contrary to Mr. Talbot's representation to the PTO, however, there were other types of messages disclosed in the GSM Standard, including one or more of the withheld portions of the GSM Standard referenced above.  Also, SMS messages in the GSM Standard were not limited to "text," and the GSM Standard allowed for messaging conduits that included programming information.

105.    On information and belief, Mr. Talbot, in breach of the duty of candor and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent Application, which renders the '933 Patent unenforceable.  On information and belief, Mr.

21

Talbot committed inequitable conduct by making material misrepresentations to the PTO during prosecution of the '933 Patent Application, with an intent to mislead or deceive the prosecuting examiner.  On information and belief, Mr. Talbot knew that the representations described above were misleading.  Furthermore, on information and belief, Mr. Talbot knew that the misrepresentations described above were highly material to patentability.  Because of the high materiality of these misrepresentations, the PTO would have found at least Claims 1-14 and 16-20 of the '933 Patent unpatentable had Mr. Talbot not made those misrepresentations.  Those intentional and deceptive misrepresentations constitute inequitable conduct that renders the '933 Patent unenforceable.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Alltel Corporation prays that this Court enter judgment:

A.     dismissing the Complaint with prejudice and denying each and every prayer for relief contained therein;

B.     declaring that none of the asserted claims of the '933 patent are directly or indirectly infringed by the use, sale or offer for sale of any of Alltel Corporation's services or products or any other activity attributable to Alltel Corporation, either literally or under the doctrine of equivalents;

C.     declaring that the asserted claims of the '933 patent are invalid and/or unenforceable;

D.     declaring that this case is "exceptional" within the meaning of 35 U.S.C. § 285, and that all costs and expenses of this action, including reasonable attorneys' fees, be awarded to Alltel Corporation; and

E.     granting Alltel Corporation such further relief as this Court may deem necessary, just or proper.

## IX.  <u>DEMAND FOR JURY TRIAL</u>

In accordance with FED. R. CIV. P. 38(b), Alltel Corporation demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  March 12, 2010

By:  *<u>/s/ Kevin P. Anderson, with permission</u>*
 *<u>by Michael E. Jones</u>*
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P.O. Box 359
Tyler, TX 75710
Tel: (903) 597-8311
Fax: (903) 593-0846

James H. Wallace, Jr. (*pro hac vice*)
jwallace@wileyrein.com
Kevin P. Anderson (*pro hac vice*)
kanderson@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Tel:  (202) 719-7000
Fax: (202) 719-7049

*Counsel for Defendant Alltel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's EM/ECF system per Local Rule CV-5(a)(3) on this 12th day of March 2010.  Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Michael E. Jones*
Michael E. Jones