## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| CELLTRACE LLC, | |
| Plaintiff, | |
| v. | Case No. 6:09-CV-00294-LED |
| AT&T, INC., AT&T MOBILITY LLC, T-MOBILE USA, INC., ALLTEL CORPORATION, ALLTEL COMMUNICATIONS, LLC, ETEX TELEPHONE COOPERATIVE INC., ETEX COMMUNICATIONS, L.P., METROPCS COMMUNICATIONS, INC., METROPCS WIRELESS, INC., SPRINT NEXTEL CORPORATION, SPRINT SPECTRUM, L.P., SPRINT COMMUNICATIONS COMPANY, L.P., NEXTEL OPERATIONS, INC., NEXTEL WEST CORP., NEXTEL OF CALIFORNIA, INC., NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC., NEXTEL OF NEW YORK, INC., NEXTEL SOUTH CORP., NEXTEL OF TEXAS, INC., UNITED STATES CELLULAR CORPORATION, and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | Jury Trial Demanded |
| Defendants. | |

### T-MOBILE USA, INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendant T-Mobile USA, Inc. ("T-Mobile"), by its attorneys, answers the Original Complaint of Plaintiff Celltrace LLC ("Celltrace" or "Plaintiff") as follows.

T-Mobile further states that anything in Plaintiff's Original Complaint that is not expressly admitted is hereby denied.

### THE PARTIES

1.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 1 of the Original Complaint, and therefore denies these allegations.

2.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 2 of the Original Complaint, and therefore denies these allegations.

3.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 3 of the Original Complaint, and therefore denies these allegations.

4.      Admitted.

5.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 5 of the Original Complaint, and therefore denies these allegations.

6.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 6 of the Original Complaint, and therefore denies these allegations.

7.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 7 of the Original Complaint, and therefore denies these allegations.

8.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 8 of the Original Complaint, and therefore denies these allegations.

9.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 9 of the Original Complaint, and therefore denies these allegations.

10.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 10 of the Original Complaint, and therefore denies these allegations.

11.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 11 of the Original Complaint, and therefore denies these allegations.

12.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 12 of the Original Complaint, and therefore denies these allegations.

13.      T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 13 of the Original Complaint, and therefore denies these allegations.

14.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 14 of the Original Complaint, and therefore denies these allegations.

15.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 15 of the Original Complaint, and therefore denies these allegations.

16.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 16 of the Original Complaint, and therefore denies these allegations.

17.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 17 of the Original Complaint, and therefore denies these allegations.

18.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 18 of the Original Complaint, and therefore denies these allegations.

19.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 19 of the Original Complaint, and therefore denies these allegations.

20.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 20 of the Original Complaint, and therefore denies these allegations.

21.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 21 of the Original Complaint, and therefore denies these allegations.

22.     T-Mobile lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 22 of the Original Complaint, and therefore denies these allegations.

**JURISDICTION AND VENUE**

23.     T-Mobile admits that the Original Complaint purports to bring a suit regarding alleged patent infringement, but T-Mobile denies the legal sufficiency of Plaintiff's claims and allegations and denies that Plaintiff has any viable claim thereunder.  T-Mobile admits that this

Court has jurisdiction over claims for patent infringement pursuant to 35 U.S.C. § 1, *et seq.*, and pursuant to 28 U.S.C. § 1331 and § 1338(a).

24.     For the purposes of this action, T-Mobile consents to personal jurisdiction.  T-Mobile admits that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and § 1400(b).  To the extent the remaining allegations of Paragraph 24 of the Complaint relate to T-Mobile, T-Mobile denies these allegations.  T-Mobile otherwise lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 24 of the Original Complaint relating to the other defendants, and therefore denies these allegations.

25.     To the extent the allegations of Paragraph 25 of the Original Complaint relate to T-Mobile, T-Mobile denies these allegations.  T-Mobile otherwise lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 25 of the Original Complaint relating to the other defendants, and therefore denies these allegations.

## PATENT INFRINGEMENT

26.     T-Mobile admits that Exhibit A to the Original Complaint appears to be a copy of U.S. Patent No. 6,011,976 ("the '976 patent"), entitled "Telecommunications System with Value Added Service Directory and an Integrated Circuit Module Therefor," and bears an issue date of January 4, 2000.  T-Mobile admits that Exhibit B to the Original Complaint appears to be a copy of U.S. Patent No. 7,551,933 ("the '933 patent"), entitled "Telecommunications System," and bears an issue date of June 23, 2009.  T-Mobile otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26 of the Original Complaint, and therefore denies these allegations.

27.     To the extent the allegations of Paragraph 27 of the Original Complaint relate to T-Mobile, T-Mobile denies these allegations.  T-Mobile otherwise lacks knowledge or

information sufficient to form a belief as to the allegations of Paragraph 27 of the Original

Complaint relating to the other defendants, and therefore denies these allegations.

## COUNT I – INFRINGEMENT OF THE '976 PATENT

28.     No response is required to Celltrace's incorporation by reference of the foregoing

paragraphs of its Original Complaint.  To the extent a response is deemed required, T-Mobile

incorporates by reference its responses and averrals in Answer Paragraphs 1-27, above.

29.     To the extent the allegations of Paragraph 29 of the Original Complaint relate to

T-Mobile, T-Mobile denies these allegations.  T-Mobile otherwise lacks knowledge or

information sufficient to form a belief as to the allegations of Paragraph 29 of the Original

Complaint relating to another defendant, and therefore denies these allegations.

30.     To the extent the allegations of Paragraph 30 of the Original Complaint relate to

T-Mobile, T-Mobile denies these allegations.  T-Mobile otherwise lacks knowledge or

information sufficient to form a belief as to the allegations of Paragraph 30 of the Original

Complaint relating to the other defendants, and therefore denies these allegations.

## COUNT II – INFRINGEMENT OF THE '933 PATENT

31.     No response is required to Celltrace's incorporation by reference of the foregoing

paragraphs of its Original Complaint.  To the extent a response is deemed required, T-Mobile

incorporates by reference its responses and averrals in Answer Paragraphs 1-27, above.

32.     To the extent the allegations of Paragraph 32 of the Original Complaint relate to

T-Mobile, T-Mobile denies these allegations.  T-Mobile otherwise lacks knowledge or

information sufficient to form a belief as to the allegations of Paragraph 32 of the Original

Complaint relating to the other defendants, and therefore denies these allegations.

33.     To the extent the allegations of Paragraph 33 of the Original Complaint relate to T-Mobile, T-Mobile denies these allegations.  T-Mobile otherwise lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 33 of the Original Complaint relating to the other defendants, and therefore denies these allegations.

### RESPONSE TO CELLTRACE'S JURY DEMAND

A response is not required to Plaintiff's demand for a jury trial.  To the extent that a response is deemed required, T-Mobile also requests a jury trial for all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### RESPONSE TO CELLTRACE'S PRAYER FOR RELIEF

A response is not required to Plaintiff's prayer for relief.  To the extent that a response is deemed required, T-Mobile denies that Plaintiff is entitled to be awarded any relief whatsoever. Plaintiff's prayer should therefore be denied in its entirety and with prejudice, and Plaintiff should take nothing therefor.

### AFFIRMATIVE DEFENSES

34.     Further answering the Original Complaint and as additional answers thereto, T-Mobile asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

### (Non-Infringement)

35.     T-Mobile has not infringed, and does not directly or indirectly infringe, any valid, enforceable claim of the '976 patent or the '933 patent, either literally or under the doctrine of equivalents.  T-Mobile has not contributorily infringed nor induced infringement of any valid, enforceable claim of the '976 patent or the '933 patent.

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

36.     One or more claims of the '976 patent and the '933 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

## THIRD AFFIRMATIVE DEFENSE

### (Laches, Equitable Estoppel, Consent and Waiver)

37.     Plaintiff's claims are barred in whole or in part by the doctrine of laches, the doctrine of equitable estoppel, Plaintiff's consent, and Plaintiff's waiver.

## FOURTH AFFIRMATIVE DEFENSE

### (Notice – 35 U.S.C. § 287)

38.     To the extent Plaintiff seeks damages for any alleged infringement prior to its giving actual notice of the '976 patent and the '933 patent to T-Mobile, its claims are barred pursuant to 35 U.S.C. § 287(a).

## FIFTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

39.     The '976 Patent and the '933 Patent are unenforceable due to inequitable conduct. On information and belief, one or more persons involved in the prosecution of the applications leading to these patents violated their duty of candor and good faith to the United States Patent and Trademark Office (the "PTO") by intentionally and deceptively failing to disclose to the PTO information material to patentability of the '976 and the '933 Patents.

40.     Defendant T-Mobile asserts this inequitable conduct defense with respect to the '976 and the '933 Patents based on the information presently available to it.  Because discovery

7

is still in progress, T-Mobile reserves the right to amend or supplement this defense as appropriate.

### The '976 Patent - Failure to Disclose the GSM Standard

41.     Wayne David Michaels, Anthony Richard Timson, and Aden William Dervan are the named inventors of the '976 Patent.  They were personally involved in the prosecution of the '976 Patent application.  Their signatures appear on an inventor declaration pursuant to 37 C.F.R. § 1.63 in the prosecution history.   In the declaration, Messrs. Michaels, Timson, and Dervan "acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations. §1.56(a)."  (Submission of Missing Parts of Application, February 13, 1996, at 2).

42.     Richard C. Stevens was an attorney at the law firm formerly known as Killworth Gottman Hagan & Schaeff and is now an attorney at the law firm of Stevens & Showalter.  Mr. Stevens was personally involved in the prosecution of the '976 Patent application.  Mr. Stevens' signature appears on the application transmittal form and other communications with the PTO in the prosecution history.

43.     On information and belief, one or more persons described in paragraphs 41-42 above (collectively, "the '976 Applicants"), in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '976 Patent application, which renders the '976 Patent unenforceable.

44.     On information and belief, one or more of the '976 Applicants knew about, but never disclosed, material prior art during the prosecution of the '976 Patent application.  More specifically, they knew about but intentionally and with deceptive intent failed to disclose material portions of the GSM Standard during the prosecution of the '976 Patent application,

including at least GSM 2.17, 3.40, 3.41, and 11.11.  Those portions of the GSM Standard were not considered by the PTO during prosecution of the '976 Patent application.  Those portions of the GSM Standard were published before the alleged priority date of the '976 Patent.

45.     The prior art portions of the GSM Standard the '976 Applicants failed to disclose to the PTO were material to patentability of the '976 Patent.  The '976 Applicants referred repeatedly to "GSM system[s]" in the specification of the '976 Patent, because such systems based on the GSM Standard were highly relevant to the subject matter they sought to claim.  In fact, the '976 Applicants stated that their alleged invention was "particularly applicable to global telecommunication systems in which the mobile cellular telephone networks of various countries or areas communicate using a common standard," citing systems implementing the GSM Standard as the primary example of such a system.  '976 Patent, 2:46-49; s*ee also e.g*., Figs. 1-2, and 4:3:10-14, 19-20, and 57-58.  The '976 Applicants' statements regarding the particular applicability of their alleged invention to a GSM system alone establishes the materiality of the prior art GSM Standard.

46.     On information and belief, one or more of the '976 Applicants had knowledge of the GSM Standard described above.  The '976 Patent itself suggested that GSM used a common standard.   '976 Patent, 2:46-51.   As discussed above, the '976 Applicants also expressly suggested the applicability of their alleged invention to GSM systems.  On information and belief, the '976 Applicants were familiar with the details of the GSM Standard, which described details highly relevant to the elements of Claims 2-5, 10-14, and 16-18 of the '976 Patent.

47.     During the prosecution of the '976 Patent application, the PTO found that no prior art of record satisfied the claims of the '976 Patent.  However, at least under Celltrace's apparent

interpretations regarding the '976 Patent claims,[1] the GSM Standard anticipates or renders obvious all of the elements of Claims 2-5, 10-14, and 16-18 as detailed in the Invalidity Chart for the '976 Patent by the GSM Solution, attached as Exhibit 1 to Defendants' Invalidity Contentions ("GSM Solution, Exhibit 1").  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '976 Patent claims, if any of the '976 Applicants had submitted the GSM Standard to the examiner during the prosecution of the '976 Patent, the examiner would have found the '976 Patent's claims unpatentable based on that prior art.

48.     The GSM Standard is not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '976 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 1.  As the GSM Solution, Exhibit 1 demonstrates, the GSM Standard is material to patentability of at least Claims 2-5, 10-14, and 16-18 of the '976 Patent.  Because of the high materiality of the GSM Standard, as evidenced by the GSM Solution, Exhibit 1, at least under Celltrace's apparent interpretations regarding the '976 Patent claims, the PTO would have found Claims 2-5, 10-14, and 16-18 unpatentable had it known of the GSM Standard.

49.     Applicants' familiarity with the GSM Standard, along with the high materiality of that reference as set forth in the GSM Solution, Exhibit 1, demonstrates that one or more of the '976 Applicants intended to withhold the GSM Standard during the prosecution of the '976 Patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '976 Patent unenforceable.

---

[1]   Nothing in this pleading is an admission by Defendant T-Mobile that any of Plaintiff's interpretations or allegations is correct.

## The '933 Patent - Related Applications Unenforceable

50.     As described in paragraphs 41-49 above, on information and belief, one or more persons involved in the prosecution of the '976 Patent application, in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '976 Patent application.  This inequitable conduct renders the '933 Patent unenforceable because the '933 Patent is a child of the '976 Patent.

## The '933 Patent - Failure to Disclose GSM 2.17 and Other Portions of the GSM Standard

51.     Wayne David Michaels, Anthony Richard Timson, and Aden William Dervan are the named inventors of the '933 Patent.  They were personally involved in the prosecution of the '933 Patent application.  Their signatures appear on an inventor declaration under 37 C.F.R. § 1.63 in the prosecution history.   In that declaration, Messrs. Michaels, Timson, and Dervan "acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations. §1.56(a)."

52.     Richard C. Stevens is an attorney at the law firm of Stevens & Showalter.  Mr. Stevens was personally involved in the prosecution of the '933 Patent application.  Mr. Stevens' signature appears on the application transmittal form and other communications with the PTO in the prosecution history.

53.     Robert O. Groover, III, is an attorney at the law firm of Groover & Associates.  Mr. Groover was personally involved in the prosecution of the '933 Patent application.  Mr. Groover's signature appears on several communications with the PTO in the prosecution history of the '933 patent.

54.     On information and belief, one or more persons described in paragraphs 51-53 above (collectively, "the '933 Applicants"), in breach of the duty of candor and good faith, and

with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent application, which renders the '933 Patent unenforceable.

55.     On information and belief, one or more of the '933 Applicants knew about, but never disclosed, material prior art during the prosecution of the '933 Patent application.  More specifically, they knew about but intentionally and with deceptive intent failed to disclose material portions of the GSM Standard during the prosecution of the '933 Patent application, including GSM 2.17, entitled "Subscriber Identity Module Functional Characteristics."  The '933 Applicants also failed to disclose GSM 2.01, 2.03, 2.06, 2.07, 2.30, 3.02, 4.01, 4.02, 4.03, 4.05, 4.06, 4.07, 4.08, 4.11, 4.22, and 7.01, all of which are material, non-cumulative portions of the GSM Standard.  Those portions of the GSM Standard were not considered by the PTO during prosecution of the '976 Patent.  Those portions of the GSM Standard were published before the alleged priority date of the application to which the '933 Patent claims priority.

56.     The prior art GSM Standard that the '933 Applicants failed to disclose to the PTO was material to the patentability of the '933 Patent.  The '933 Applicants referred repeatedly to "GSM system[s]" in the specification of the '933 Patent, because such systems based on the GSM Standard were highly relevant to the subject matter they sought to claim.  In fact, the '933 Applicants stated that their alleged invention was "particularly applicable to global telecommunication systems in which the mobile cellular telephone networks of various countries or areas communicate using a common standard," citing GSM as the primary example of such a system.  '933 Patent, 2:45-51; *see also, e.g.*, Figs. 1-2, and 4; 3:11-13, 25-26, and 64-65.  The '933 Applicants' statements regarding the particular applicability of their alleged invention to a GSM system alone establishes the materiality of the prior art undisclosed portions of the GSM Standard.

57.     The materiality of the undisclosed portions of the GSM Standard is also evidenced by their clear relation to the asserted claims.  In particular, Claims 1-14, 16, and 20 of the '933 Patent are directed to a GSM-compatible telecommunications network.  The undisclosed portions of the GSM Standard also relate to a GSM-compatible telecommunications network, confirming the materiality of that art.

58.     On information and belief, one or more of the '933 Applicants had knowledge of the GSM Standard.  Applicants expressly suggested the applicability of their alleged invention to GSM systems.  On information and belief, the '933 Applicants were familiar with the details of the GSM Standard, which described the operation of the cited GSM systems, including the details of that prior art highly relevant to elements of Claims 1-14, and 16-20 of the '933 Patent.

59.     During the prosecution of the '933 Patent application, the PTO found that no prior art of record satisfied the claims of the '933 Patent.  However, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, the undisclosed GSM Standard anticipates or renders obvious all of the elements of Claims 1-14 and 16-20 as detailed in the Invalidity Chart for the '933 Patent by the GSM Solution, attached as Exhibit 2 to Defendants' Invalidity Contentions ("GSM Solution, Exhibit 2").  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '933 Patent claims, if any of the '933 Applicants had submitted the undisclosed portions of the GSM Standard to the examiner during the prosecution of the '933 Patent application, the examiner would have found the '933 Patent's claims unpatentable based on that prior art.

60.     The undisclosed portions of the GSM Standard are not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '933 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM

Solution, Exhibit 2.  As the GSM Solution, Exhibit 2 demonstrates, the undisclosed portions of the GSM Standard are material to patentability of at least Claims 1-14 and 16-20 of the '933 Patent.  Because of the high materiality of the undisclosed portions of the GSM Standard, as evidenced by the GSM Solution, Exhibit 2, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, the PTO would have found Claims 1-14 and 16-20 of the '933 Patent unpatentable had it known of those publications.

61.     The '933 Applicants' familiarity with the undisclosed portions of the GSM Standard, along with the high materiality of those references as set forth in the GSM Solution, Exhibit 2, demonstrates that one or more of the '933 Applicants intended to withhold those references during the prosecution of the '933 Patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '933 Patent unenforceable.

**The '933 Patent - Failure to Disclose GSM 3.40 Publication Date**

62.     Robert O. Groover, III, is an attorney at the law firm of Groover & Associates. Mr. Groover was personally involved in the prosecution of the '933 Patent application.  Mr. Groover's signature appears on several communications with the PTO in the prosecution history.

63.     On February 14, 2008, Mr. Groover submitted an Information Disclosure Statement ("IDS") to the PTO.  In the IDS, Mr. Groover cited GSM 3.40, Version 3.5.0.  This version of GSM 3.40 was published in 1992, and this date is prominently displayed on the cover page of that publication.  However, Mr. Groover failed to provide the date of this reference in the IDS or at any later time to the PTO.

64.     On page 2 of the office action dated April 24, 2008, the prosecuting examiner advised Mr. Groover that "The information disclosure statement filed on 2/14/2008 fails to

comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because some of the cited documents (namely, documents no. 5, 6, 10, and 11) do not have their corresponding publication dates.  It has been placed in the application file, but the information referred to therein has not been considered as to the merits."

65.     On May 6, 2009, the prosecuting examiner issued a Notice of Allowance.  In the attached statements, the examiner noted that "some of the cited documents were not provided with their publication dates."  The Notice of Allowance included a revised copy of the IDS, wherein the examiner indicated that GSM 3.40, Version 3.5.0 was not considered during prosecution.  On June 23, 2009, the PTO issued the '933 Patent; however, GSM 3.40 is not listed as a cited reference in the issued patent.

66.     On information and belief, Mr. Groover, in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent application, which renders the '933 Patent unenforceable.

67.     On information and belief, Mr. Groover knew that GSM 3.40 was published in 1992.  GSM 3.40 was published before the alleged priority date of the '933 Patent.  On information and belief, Mr. Groover purposefully failed to disclose the publication of GSM 3.40 with the intent to mislead the PTO.  As a result, Mr. Groover knew that it had not been considered by the prosecuting examiner and, upon information and belief, intended for it not to be considered by the examiner.  Otherwise, having been twice notified of the deficiency, Mr. Groover could have, at a minimum, filed a Request for Continued Examination, submitted the date for GSM 3.40, and allowed for the reference to be considered by the examiner.

68.     For the same reasons as discussed in paragraphs 56-57 above, the materiality of GSM 3.40 is demonstrated by the repeated referrals to GSM systems in the specification of the

15

'933 Patent and by the relation between GSM 3.40 and the asserted claims.  T-Mobile realleges and incorporates by reference the allegations of paragraphs 56-57 as though fully set forth herein.

69.     During the prosecution of the '933 Patent application, the PTO found that no prior art of record satisfied the claims of the '933 Patent.  However, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, GSM 3.40 anticipates or renders obvious all of the elements of Claims 1-14 and 16-20 as detailed in the GSM Solution, Exhibit 2.  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '933 Patent claims, if Mr. Groover had submitted the publication date of GSM 3.40 to the examiner during the prosecution of the '933 Patent, the examiner would have found the '933 Patent's claims unpatentable based on that prior art.

70.     GSM 3.40 is not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '933 Patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 2.  As Exhibit 2 demonstrates, GSM 3.40, the features of which, on information and belief, Mr. Groover had knowledge, is material to patentability of at least Claims 1-14 and 16-20 of the '933 Patent. Because of the high materiality of GSM 3.40, as evidenced by the GSM Solution, Exhibit 2, at least under Celltrace's apparent interpretations regarding the '933 Patent claims, the PTO would have found Claims 1-14 and 16-20 of the '933 Patent unpatentable had it considered the publication.

71.     Applicants' knowledge of the publication date of GSM 3.40, along with the high materiality of this reference as set forth in the GSM Solution, Exhibit 2, demonstrates that Mr. Groover intended to withhold the publication date of this reference during the prosecution of the

'933 Patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '933 Patent unenforceable.

### The '933 Patent - Intentional and Deceptive Misrepresentations

72.     C. Scott Talbot is an attorney at the law firm of Cooley Goodward Kronish LLP.  Mr. Talbot was personally involved in the prosecution of the '933 Patent Application.  Mr. Talbot's signature appears on several communications with the PTO in the prosecution history.

73.     On page 18 of the September 25, 2005 amendment and response to office action filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that in the prior art: "All message processing was handled by the handset.  This is evidenced by the GSM standard in effect at the time of the priority filing date of the present application (June 1994).  This standard (GSM 11.11 version 3.10.0 February 1992) was the only standard applicable to telecommunications systems with removable modules."  Contrary to Mr. Talbot's representation to the PTO, however, many other prior art GSM standards documents, including one or more of the withheld standards documents referenced above, were applicable to telecommunications systems with removable modules.

74.     On page 18 of the September 25, 2005 amendment and response to office action filed during prosecution of the '933 Patent Application, Mr. Talbot characterized the GSM prior art by representing that: "It was not until 1996 that the [GSM] standards were amended to allow for the messaging conduit to include programming information and for this functionality to provided [sic] in the SIM.  At the time the invention was made, the relevant standard not only specified a single format for messaging, it provided that the handset reads and analyzes header information in such messages."  Contrary to Mr. Talbot's representation to the PTO, however, the prior art portions of the GSM Standard, including one or more of the undisclosed portions of

the GSM Standard described above, disclosed messaging conduits that included programming information and also specified multiple formats for messaging.

75.     On pages 2-3 of the March 13, 2007 arguments in support of pre-appeal brief request for review filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that: "Further, the Examiner seems to apply the present state of the art, instead of the appropriate state of the art when the invention was made.  At the time of the priority filing date for the current application, the only standard applicable to telecommunications systems with removable modules was the GSM standard.  The relevant GSM standard (GSM 11.11 version 3.10.0 February 1992) specified a single format for messaging - there were no enhanced messages for communicating with the module."  Contrary to Mr. Talbot's representation to the PTO, however, there were many other portions of the GSM Standard relevant to messaging, including one or more undisclosed portions of the GSM Standard described above.

76.     On page 3 of the March 13, 2007 arguments in support of pre-appeal brief request for review filed during prosecution of the '933 Patent Application, Mr. Talbot represented to the PTO that: "There was only one type of message (the SMS "text" message) and no analysis of the messages was performed in the module . . . .  It was not until 1996, three years after the priority filing date, that the standards were amended to allow for the messaging conduit to include programming information and for this functionality to be provided to the SIM."  Contrary to Mr. Talbot's representation to the PTO, however, there were other types of messages disclosed in the GSM Standard, including one or more of the withheld portions of the GSM Standard referenced above.  Also, SMS messages in the GSM Standard were not limited to "text," and the GSM Standard allowed for messaging conduits that included programming information.

77.     On information and belief, Mr. Talbot, in breach of the duty of candor and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 Patent Application, which renders the '933 Patent unenforceable.  On information and belief, Mr. Talbot committed inequitable conduct by making material misrepresentations to the PTO during prosecution of the '933 Patent Application, with an intent to mislead or deceive the prosecuting examiner.  On information and belief, Mr. Talbot knew that the representations described above were misleading.   Furthermore, on information and belief, Mr. Talbot knew that the misrepresentations described above were highly material to patentability.  Because of the high materiality of these misrepresentations, the PTO would have found at least Claims 1-14 and 16-20 of the '933 Patent unpatentable had Mr. Talbot not made those misrepresentations.  Those intentional and deceptive misrepresentations constitute inequitable conduct that renders the '933 Patent unenforceable.

## SIXTH AFFIRMATIVE DEFENSE

### (Prosecution Laches)

78.     Plaintiff's claims are barred, in whole or in part, because the '933 patent is unenforceable due to prosecution laches.  The '933 patent claims priority to a PCT application (No. PCT/GB94/01295) filed on June 15, 1994.  That application later issued as the '976 patent. Patentee did not file application No. 10/215,989, the application that led to the '933 patent until August 9, 2002, after filing two additional continuation applications claiming priority to the June 15, 1994 PCT application.  The patentee then spent almost fifteen years prosecuting continuation applications until the '933 patent finally issued on June 23, 2009.  The patentee has provided no explanation for this unreasonable and unexplained delay in the issuance of the '933 patent, rendering that patent unenforceable on the basis of prosecution laches.

## COUNTERCLAIMS

For its Counterclaims in the above-captioned action, T-Mobile USA, Inc. ("T-Mobile") hereby alleges as follows:

## THE PARTIES

1.      T-Mobile is a Delaware corporation whose principal place of business is located at 12920 S.E. 38th Street, Bellevue, WA 98006-1350.

2.      On information and belief, Celltrace LLC ("Celltrace") is a Texas limited liability company whose principal places of business are located in Newport Beach, California and Frisco, Texas.

## JURISDICTION AND VENUE

3.      These counterclaims arise under federal law, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

4.      Venue is proper under at least 28 U.S.C. §§ 1391 and 1400(b).

5.      Plaintiff has asserted that T-Mobile infringes U.S. Patent Nos. 6,011,976 ("the '976 patent") and 7,551,933 ("the '933 patent") (collectively, "the patents-in-suit").  An actual controversy exists between T-Mobile and Plaintiff over the alleged infringement and invalidity of the patents-in-suit.

## FIRST COUNTERCLAIM

### (Non-Infringement)

6.      T-Mobile realleges counterclaim paragraphs 1 through 5 as though fully set forth herein.

7.      T-Mobile has not infringed, and does not directly or indirectly infringe, any valid, enforceable claim of the '976 patent or the '933 patent, either literally or under the doctrine of equivalents.  T-Mobile has not contributorily infringed nor induced infringement of any valid, enforceable claim of the '976 patent or the '933 patent.

8.      Accordingly, T-Mobile is entitled to a declaratory judgment that it does not infringe any valid, enforceable claim of the patents-in-suit.

## SECOND COUNTERCLAIM

### (Invalidity)

9.      T-Mobile realleges counterclaim paragraphs 1 through 8  as though fully set forth herein.

10.      The '976 patent and the '933 patent are invalid for failing to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103 and 112.

11.      Accordingly, T-Mobile is entitled to a declaratory judgment that the patents-in-suit are invalid.

## THIRD COUNTERCLAIM

### (Inequitable Conduct)

12.      T-Mobile realleges counterclaim paragraphs 1 through 11  as though fully set forth herein.

13.      T-Mobile incorporates paragraphs 39 through 77 of its Fifth Affirmative Defense as though fully set forth herein.  For the reasons set forth therein, T-Mobile is entitled to a declaratory judgment that the patents-in-suit are invalid due to inequitable conduct before the United States Patent and Trademark Office in their prosecution.

## FOURTH COUNTERCLAIM

### (Prosecution Laches)

14.     T-Mobile realleges counterclaim paragraphs 1 through 13  as though fully set forth herein.

15.     T-Mobile incorporates paragraph 78 of its Sixth Affirmative Defense as though fully set forth herein.  For the reasons set forth there, T-Mobile is entitled to a declaratory judgment that the '933 patent is unenforceable on the basis of prosecution laches.

## DEMAND FOR A JURY TRIAL

16.     T-Mobile demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

FOR THESE REASONS, T-Mobile respectfully requests that this Court enter judgment in its favor and grant the following relief:

a.      An order declaring that Plaintiff take nothing from T-Mobile on the claims asserted in the Original Complaint;

b.      A declaration that T-Mobile does not infringe any valid and enforceable claim of U.S. Patent Nos. 6,011,976 and 7,551,933;

c.      A declaration that U.S. Patent Nos. 6,011,976 and 7,551,933 are invalid;

d.      Judgment against Plaintiff in favor of T-Mobile;

e.      Dismissal of the Original Complaint with prejudice;

f.      An order declaring that this is an exceptional case under 35 U.S.C. § 285;

g.      An award to T-Mobile of its costs, expenses, and reasonable attorney fees order under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

h.      Any such other relief as the Court may deem appropriate and just under

the circumstances.

Dated: March 12, 2010                             Respectfully submitted,

                                        /s/   Benjamin Hershkowitz
                                        Josh A. Krevitt, New York Bar No. 2568228
                                        Lead Attorney
                                        Benjamin Hershkowitz, N.Y. Bar No. 2600559
                                        Charles Boudreau, N.Y. Bar No. 4042701
                                        Joshua Furman, N.Y. Bar No. 4612255
                                        GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        Telephone: (212) 351-4000
                                        Facsimile: (212) 351-4035
                                        jkrevitt@gibsondunn.com
                                        bhershkowitz@gibsondunn.com
                                        cboudreau@gibsondunn.com
                                        jfurman@gibsondunn.com

                                        *Attorneys for Defendant-Counterclaim Plaintiff
                                        T-Mobile USA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on March 12, 2010.

                                        /s/   Benjamin Hershkowitz