**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| CELLTRACE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC; T-MOBILE USA, INC.; ALLTEL CORPORATION; ALLTEL COMMUNICATIONS, LLC; and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>    Defendants. | Case No. 6:09-CV-00294-LED<br><br>Jury Trial Demanded |

<u>**T-MOBILE USA, INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIMS
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

Defendant T-Mobile USA, Inc. ("T-Mobile"), by its attorneys, answers the First

Amended Complaint of Plaintiff Celltrace LLC ("Celltrace" or "Plaintiff") as follows.

T-Mobile further states that anything in Plaintiff's First Amended Complaint that is not

expressly admitted is hereby denied.

## I.        THE PARTIES

1.        T-Mobile lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 1 of Plaintiff's First Amended Complaint, and therefore

denies them.

2.        T-Mobile lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 2 of Plaintiff's First Amended Complaint, and therefore

denies them.

3.        Admitted.

4.      T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of Plaintiff's First Amended Complaint, and therefore denies them.

5.      T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of Plaintiff's First Amended Complaint, and therefore denies them.

6.      T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of Plaintiff's First Amended Complaint, and therefore denies them.

## II.      JURISDICTION AND VENUE

7.      As to the allegations in Paragraph 7 of Plaintiff's First Amended Complaint, T-Mobile admits that Plaintiff's First Amended Complaint purports to bring a suit regarding alleged patent infringement, but T-Mobile denies the legal sufficiency of Plaintiff's claims and allegations and denies that Plaintiff has any viable claim thereunder.  T-Mobile admits that this Court has jurisdiction over claims for patent infringement pursuant to 35 U.S.C. § 1, *et seq.*, and pursuant to 28 U.S.C. § 1331 and § 1338(a).

8.      As to the allegations in Paragraph 8 of Plaintiff's First Amended Complaint, for the purposes of this action, T-Mobile consents to personal jurisdiction.  T-Mobile admits that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and § 1400(b).  To the extent the remaining allegations of Paragraph 8 of Plaintiff's First Amended Complaint relate to T-Mobile, T-Mobile denies those allegations.  To the extent those allegations pertain to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

9.     To the extent the allegations of Paragraph 9 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations and specifically denies that it is committing acts of patent infringement in the State of Texas or in this District.  To the extent those allegations pertain to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

### III.     PATENT INFRINGEMENT

10.     T-Mobile admits that Exhibit A to Plaintiff's First Amended Complaint appears to be a copy of U.S. Patent No. 6,011,976 ("the '976 patent"), entitled "Telecommunications System With Value Added Service Directory And An Integrated Circuit Module Therefor," and bears an issue date of January 4, 2000, and that Exhibit B to Plaintiff's First Amended Complaint appears to be a copy of U.S. Patent No. 7,551,933 ("the '933 patent"), entitled "Telecommunications System," and bears an issue date of June 23, 2009.  T-Mobile lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 10 of Plaintiff's First Amended Complaint, and therefore denies them.

11.     To the extent the allegations of Paragraph 11 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations.  To the extent those allegations pertain to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

### COUNT I – INFRINGEMENT OF THE '976 PATENT

12.     No response is required to Celltrace's incorporation by reference of the foregoing Paragraphs of Plaintiff's First Amended Complaint.  To the extent a response is deemed required, T-Mobile incorporates and realleges the responses and averrals in Paragraphs 1-11 above as if fully set forth herein.

13.     To the extent the allegations in Paragraph 13 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations. To the extent those allegations relate to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

14.     To the extent the allegations in Paragraph 14 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations. To the extent those allegations relate to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

15.     To the extent the allegations in Paragraph 15 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations. To the extent those allegations relate to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

16.     To the extent the allegations in Paragraph 16 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations. To the extent those allegations relate to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

## COUNT II – INFRINGEMENT OF THE '933 PATENT

17.     No response is required to Celltrace's incorporation by reference of the foregoing Paragraphs of Plaintiff's First Amended Complaint. To the extent a response is deemed required, T-Mobile incorporates and realleges the responses and averrals in Paragraphs 1-16 above as if fully set forth herein.

18.     To the extent the allegations in Paragraph 18 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations. To the extent those

allegations relate to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

19.     To the extent the allegations in Paragraph 19 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations.  To the extent those allegations relate to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

20.     To the extent the allegations in Paragraph 20 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations.  To the extent those allegations relate to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

21.     To the extent the allegations in Paragraph 21 of Plaintiff's First Amended Complaint pertain to T-Mobile, T-Mobile denies those allegations.  To the extent those allegations relate to other parties to this action, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

## IV.     RESPONSE TO CELLTRACE'S JURY DEMAND

T-Mobile is not required to respond to Plaintiff's request for a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure, but T-Mobile hereby also requests a jury for all issues so triable.

## V.     RESPONSE TO CELLTRACE'S PRAYER FOR RELIEF

A response is not required to Plaintiff's prayer for relief.  To the extent that a response is deemed required, T-Mobile denies that Plaintiff is entitled to be awarded any relief whatsoever. Plaintiff's prayer should therefore be denied in its entirety and with prejudice, and Plaintiff should take nothing therefor.

## AFFIRMATIVE DEFENSES

22.     Further answering Plaintiff's First Amended Complaint and as additional answers thereto, T-Mobile asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Non-Infringement)

23.     T-Mobile has not infringed, and does not directly or indirectly infringe, any valid, enforceable claim of the '976 patent or the '933 patent, either literally or under the doctrine of equivalents.  T-Mobile has not contributorily infringed nor induced infringement of any valid, enforceable claim of the '976 patent or the '933 patent.

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

24.     One or more claims of the '976 patent and the '933 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

## THIRD AFFIRMATIVE DEFENSE

### (Laches, Equitable Estoppel, Consent and Waiver)

25.     Plaintiff's claims are barred in whole or in part by the doctrine of laches, the doctrine of equitable estoppel, Plaintiff's consent, and Plaintiff's waiver.

## FOURTH AFFIRMATIVE DEFENSE

### (Notice, 35 U.S.C. § 287)

26.     To the extent Plaintiff seeks damages for any alleged infringement prior to its giving actual notice of the '976 patent and the '933 patent to T-Mobile, its claims are barred, including pursuant to 35 U.S.C. § 287(a).

# FIFTH AFFIRMATIVE DEFENSE

## (Inequitable Conduct)

27.     The '976 patent and the '933 patent are unenforceable due to inequitable conduct. On information and belief, one or more persons involved in the prosecution of the applications leading to these patents violated their duty of candor and good faith to the United States Patent and Trademark Office (the "PTO") by intentionally and deceptively failing to disclose to the PTO information material to patentability of the '976 patent and the '933 patent and other information required to be disclosed, including best mode.

28.     Defendant T-Mobile asserts this inequitable conduct defense with respect to the '976 patent and the '933 patent based on the information presently available to it. Because discovery is still in progress, T-Mobile reserves the right to amend or supplement this defense as appropriate.

## The '976 Patent and the '933 Patent - Failure to Disclose Embedded Command Stream

29.     Wayne David Michaels, Anthony Richard Timson, and Aden William Dervan are the named inventors of the '976 patent and the '933 patent. They were personally involved in the prosecution of both the '976 patent application and the '933 patent application. Their signatures appear on inventor declarations pursuant to 37 C.F.R. § 1.63 in the prosecution histories of both the '976 patent and the '933 patent. In both declarations, Messrs. Michaels, Timson, and Dervan "acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations. §1.56(a)."

30.     Richard C. Stevens was an attorney at the law firm formerly known as Killworth Gottman Hagan & Schaeff and is now an attorney at the law firm of Stevens & Showalter. Mr.

Stevens was personally involved in the prosecution of the '976 patent application. Mr. Stevens' signature appears on the application transmittal form and other communications with the PTO in the prosecution history of the '976 patent.

31. Richard C. Stevens is an attorney at the law firm of Stevens & Showalter. Mr. Stevens was personally involved in the prosecution of the '933 patent application. Mr. Stevens' signature appears on the application transmittal form and other communications with the PTO in the prosecution history of the '933 patent.

32. Robert O. Groover, III, is an attorney at the law firm of Groover & Associates. Mr. Groover was personally involved in the prosecution of the '933 patent application. Mr. Groover's signature appears on several communications with the PTO in the prosecution history of the '933 patent.

33. The '976 patent and the '933 patent are unenforceable because the named inventors failed to disclose to the PTO during the prosecution of the patents-in-suit the best mode they knew of for carrying out the alleged inventions. In particular, the named inventors of the patents-in-suit did not disclose to the PTO the "Embedded Command Stream" format for encoding command data into SMS messages. Moreover, the named inventors intentionally withheld from the PTO the best mode with an intent to deceive the PTO. The examiners at the PTO would never have issued the patents-in-suit had they known that the named inventors failed to comply with the best mode requirement for the '976 patent and the '933 patent.

**The '976 Patent - Failure to Disclose the GSM Standard**

34. On information and belief, one or more persons described in Paragraphs 29-30 above (collectively, "the '976 Applicants"), in breach of the duty of candor and good faith, and

with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '976 patent application, which renders the '976 patent unenforceable.

35.     On information and belief, one or more of the '976 Applicants knew about, but never disclosed, material prior art during the prosecution of the '976 patent application. More specifically, they knew about but intentionally and with deceptive intent failed to disclose material portions of the GSM Standard during the prosecution of the '976 patent application, including at least GSM 2.17, 3.40, 3.41, and 11.11. Those portions of the GSM Standard were not considered by the PTO during prosecution of the '976 patent application. Those portions of the GSM Standard were published before the alleged priority date of the '976 patent.

36.     The prior art portions of the GSM Standard the '976 Applicants failed to disclose to the PTO were material to patentability of the '976 patent. The '976 Applicants referred repeatedly to "GSM system[s]" in the specification of the '976 patent, because such systems based on the GSM Standard were highly relevant to the subject matter they sought to claim. In fact, the '976 Applicants stated that their alleged invention was "particularly applicable to global telecommunication systems in which the mobile cellular telephone networks of various countries or areas communicate using a common standard," citing systems implementing the GSM Standard as the primary example of such a system. '976 patent, 2:46-49; s*ee also e.g.*, Figs. 1-2, and 4:3:10-14, 19-20, and 57-58. The '976 Applicants' statements regarding the particular applicability of their alleged invention to a GSM system alone establishes the materiality of the prior art GSM Standard.

37.     On information and belief, one or more of the '976 Applicants had knowledge of the GSM Standard described above. The '976 patent itself suggested that GSM used a common standard. '976 patent, 2:46-51. As discussed above, the '976 Applicants also expressly

suggested the applicability of their alleged invention to GSM systems. On information and belief, the '976 Applicants were familiar with the details of the GSM Standard, which described details highly relevant to the elements of Claims 2-5, 10-14, and 16-18 of the '976 patent.

38. During the prosecution of the '976 patent application, the PTO found that no prior art of record satisfied the claims of the '976 patent. However, at least under Celltrace's apparent interpretations regarding the '976 patent claims,[1] the GSM Standard anticipates or renders obvious all of the elements of Claims 2-5, 10-14, and 16-18 as detailed in the Invalidity Chart for the '976 patent by the GSM Solution, attached as Exhibit 1 to Defendants' Invalidity Contentions ("GSM Solution, Exhibit 1"). Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '976 patent claims, if any of the '976 Applicants had submitted the GSM Standard to the examiner during the prosecution of the '976 patent, the examiner would have found the '976 patent's claims unpatentable based on that prior art.

39. The GSM Standard is not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '976 patent. Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 1. As the GSM Solution, Exhibit 1 demonstrates the GSM Standard is material to patentability of at least Claims 2-5, 10-14, and 16-18 of the '976 patent. Because of the high materiality of the GSM Standard, as evidenced by the GSM Solution, Exhibit 1, at least under Celltrace's apparent interpretations regarding the '976 patent claims, the PTO would have found Claims 2-5, 10-14, and 16-18 of the '976 patent unpatentable had it known of the GSM Standard.

---

[1] Nothing in this pleading is an admission by Defendant T-Mobile that any of Plaintiff's interpretations or allegations is correct.

40.    Applicants' familiarity with the GSM Standard, along with the high materiality of that reference as set forth in the GSM Solution, Exhibit 1, demonstrates that one or more of the '976 Applicants intended to withhold the GSM Standard during the prosecution of the '976 patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '976 patent unenforceable.

### The '933 Patent - Related Applications Unenforceable

41.    As described in Paragraphs 34-40 above, on information and belief, one or more persons involved in the prosecution of the '976 patent application, in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '976 patent application.  This inequitable conduct renders the '933 patent unenforceable because the '933 patent is a child of the '976 patent.

### The '933 Patent - Failure to Disclose GSM 2.17 and Other Portions of the GSM Standard

42.    On information and belief, one or more persons described in Paragraphs 29 and 31-32 above (collectively, "the '933 Applicants"), in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 patent application, which renders the '933 patent unenforceable.

43.    On information and belief, one or more of the '933 Applicants knew about, but never disclosed, material prior art during the prosecution of the '933 patent application.  More specifically, they knew about but intentionally and with deceptive intent failed to disclose material portions of the GSM Standard during the prosecution of the '933 patent application, including GSM 2.17, entitled "Subscriber Identity Module Functional Characteristics."  The '933 Applicants also failed to disclose GSM 2.01, 2.03, 2.06, 2.07, 2.30, 3.02, 4.01, 4.02, 4.03, 4.05, 4.06, 4.07, 4.08, 4.11, 4.22, and 7.01, all of which are material, non-cumulative portions of the

GSM Standard. Those portions of the GSM Standard were not considered by the PTO during prosecution of the '976 patent. Those portions of the GSM Standard were published before the alleged priority date of the application to which the '933 patent claims priority.

44.     The prior art GSM Standard that the '933 Applicants failed to disclose to the PTO was material to the patentability of the '933 patent. The '933 Applicants referred repeatedly to "GSM system[s]" in the specification of the '933 patent, because such systems based on the GSM Standard were highly relevant to the subject matter they sought to claim. In fact, the '933 Applicants stated that their alleged invention was "particularly applicable to global telecommunication systems in which the mobile cellular telephone networks of various countries or areas communicate using a common standard," citing GSM as the primary example of such a system. '933 patent, 2:45-51; *see also, e.g.*, Figs. 1-2, and 4; 3:11-13, 25-26, and 64-65. The '933 Applicants' statements regarding the particular applicability of their alleged invention to a GSM system alone establishes the materiality of the prior art undisclosed portions of the GSM Standard.

45.     The materiality of the undisclosed portions of the GSM Standard is also evidenced by their clear relation to the asserted claims. In particular, Claims 1-14, 16, and 20 of the '933 patent are directed to a GSM-compatible telecommunications network. The undisclosed portions of the GSM Standard also relate to a GSM-compatible telecommunications network, confirming the materiality of that art.

46.     On information and belief, one or more of the '933 Applicants had knowledge of the GSM Standard. Applicants expressly suggested the applicability of their alleged invention to GSM systems. On information and belief, the '933 Applicants were familiar with the details of

the GSM Standard, which described the operation of the cited GSM systems, including the details of that prior art highly relevant to elements of Claims 1-14, and 16-20 of the '933 patent.

47.     During the prosecution of the '933 patent application, the PTO found that no prior art of record satisfied the claims of the '933 patent.  However, at least under Celltrace's apparent interpretations regarding the '933 patent claims, the undisclosed GSM Standard anticipates or renders obvious all of the elements of Claims 1-14 and 16-20 as detailed in the Invalidity Chart for the '933 patent by the GSM Solution, attached as Exhibit 2 to Defendants' Invalidity Contentions ("GSM Solution, Exhibit 2").  Because of these highly material teachings, at least under Celltrace's apparent interpretations of the '933 patent claims, if any of the '933 Applicants had submitted the undisclosed portions of the GSM Standard to the examiner during the prosecution of the '933 patent application, the examiner would have found the '933 patent's claims unpatentable based on that prior art.

48.     The undisclosed portions of the GSM Standard are not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '933 patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 2.  As the GSM Solution, Exhibit 2 demonstrates, the undisclosed portions of the GSM Standard are material to patentability of at least Claims 1-14 and 16-20 of the '933 patent.  Because of the high materiality of the undisclosed portions of the GSM Standard, as evidenced by the GSM Solution, Exhibit 2, at least under Celltrace's apparent interpretations regarding the '933 patent claims, the PTO would have found Claims 1-14 and 16-20 of the '933 patent unpatentable had it known of those publications.

49.     The '933 Applicants' familiarity with the undisclosed portions of the GSM Standard, along with the high materiality of those references as set forth in the GSM Solution,

Exhibit 2, demonstrates that one or more of the '933 Applicants intended to withhold those references during the prosecution of the '933 patent application, and did so with intent to deceive the PTO. This intentional and deceptive withholding constitutes inequitable conduct that renders the '933 patent unenforceable.

### The '933 Patent - Failure to Disclose GSM 3.40 Publication Date

50.     Robert O. Groover, III, is an attorney at the law firm of Groover & Associates. Mr. Groover was personally involved in the prosecution of the '933 patent application. Mr. Groover's signature appears on several communications with the PTO in the prosecution history.

51.     On February 14, 2008, Mr. Groover submitted an Information Disclosure Statement ("IDS") to the PTO. In the IDS, Mr. Groover cited GSM 3.40, Version 3.5.0. This version of GSM 3.40 was published in 1992, and this date is prominently displayed on the cover page of that publication. However, Mr. Groover failed to provide the date of this reference in the IDS or at any later time to the PTO.

52.     On page 2 of the office action dated April 24, 2008, the prosecuting examiner advised Mr. Groover that "The information disclosure statement filed on 2/14/2008 fails to comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because some of the cited documents (namely, documents no. 5, 6, 10, and 11) do not have their corresponding publication dates. It has been placed in the application file, but the information referred to therein has not been considered as to the merits."

53.     The prosecuting examiner issued a Notice of Allowance and Fee(s) Due with a mailing date of May 13, 2009 and a Notice of Allowability with a mailing date of May 6, 2009. In the attached statements, the examiner noted that "some of the cited documents were not provided with their publication dates." The Notice of Allowance included a revised copy of the

IDS, wherein the examiner indicated that GSM 3.40, Version 3.5.0 was not considered during prosecution. On June 23, 2009, the PTO issued the '933 patent; however, GSM 3.40 is not listed as a cited reference in the issued patent.

54. On information and belief, Mr. Groover, in breach of the duty of candor and good faith, and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 patent application, which renders the '933 patent unenforceable.

55. On information and belief, Mr. Groover knew that GSM 3.40 was published in 1992. GSM 3.40 was published before the alleged priority date of the '933 patent. On information and belief, Mr. Groover purposefully failed to disclose the publication of GSM 3.40 with the intent to mislead the PTO. As a result, Mr. Groover knew that it had not been considered by the prosecuting examiner and, upon information and belief, intended for it not to be considered by the examiner. Otherwise, having been twice notified of the deficiency, Mr. Groover could have, at a minimum, filed a Request for Continued Examination, submitted the date for GSM 3.40, and allowed for the reference to be considered by the examiner.

56. For the same reasons as discussed in Paragraphs 44-45 above, the materiality of GSM 3.40 is demonstrated by the repeated referrals to GSM systems in the specification of the '933 patent and by the relation between GSM 3.40 and the asserted claims. T-Mobile realleges and incorporates by reference the allegations of Paragraphs 44-45 as though fully set forth herein.

57. During the prosecution of the '933 patent application, the PTO found that no prior art of record satisfied the claims of the '933 patent. However, at least under Celltrace's apparent interpretations regarding the '933 patent claims, GSM 3.40 anticipates or renders obvious all of the elements of Claims 1-14 and 16-20 as detailed in the GSM Solution, Exhibit 2. Because of

these highly material teachings, at least under Celltrace's apparent interpretations of the '933 patent claims, if Mr. Groover had submitted the publication date of GSM 3.40 to the examiner during the prosecution of the '933 patent, the examiner would have found the '933 patent's claims unpatentable based on that prior art.

58.     GSM 3.40 is not cumulative of the prior art of record because none of that prior art was found by the PTO to anticipate the claims of the '933 patent.  Also, that prior art does not teach the particular combinations identified in the GSM Solution, Exhibit 2.  As Exhibit 2 demonstrates, GSM 3.40, the features of which, on information and belief, Mr. Groover had knowledge, is material to patentability of at least Claims 1-14 and 16-20 of the '933 patent. Because of the high materiality of GSM 3.40, as evidenced by the GSM Solution, Exhibit 2, at least under Celltrace's apparent interpretations regarding the '933 patent claims, the PTO would have found Claims 1-14 and 16-20 of the '933 patent unpatentable had it considered the publication.

59.     Applicants' knowledge of the publication date of GSM 3.40, along with the high materiality of this reference as set forth in the GSM Solution, Exhibit 2, demonstrates that Mr. Groover intended to withhold the publication date of this reference during the prosecution of the '933 patent application, and did so with intent to deceive the PTO.  This intentional and deceptive withholding constitutes inequitable conduct that renders the '933 patent unenforceable.

### The '933 Patent - Intentional and Deceptive Misrepresentations

60.     C. Scott Talbot is an attorney at the law firm of Cooley Godward Kronish LLP. Mr. Talbot was personally involved in the prosecution of the '933 patent application.  Mr. Talbot's signature appears on several communications with the PTO in the prosecution history.

61.     On page 18 of the September 25, 2005 amendment and response to office action filed during prosecution of the '933 patent application, Mr. Talbot represented to the PTO that in the prior art: "All message processing was handled by the handset.  This is evidenced by the GSM standard in effect at the time of the priority filing date of the present application (June 1994).   This standard (GSM 11.11 version 3.10.0 February 1992) was the only standard applicable to telecommunications systems with removable modules."  Contrary to Mr. Talbot's representation to the PTO, however, many other prior art GSM standards documents, including one or more of the withheld standards documents referenced above, were applicable to telecommunications systems with removable modules.

62.     On page 18 of the September 25, 2005 amendment and response to office action filed during prosecution of the '933 patent application, Mr. Talbot characterized the GSM prior art by representing that: "It was not until 1996 that the [GSM] standards were amended to allow for the messaging conduit to include programming information and for this functionality to provided [sic] in the SIM.  At the time the invention was made, the relevant standard not only specified a single format for messaging, it provided that the handset reads and analyzes header information in such messages."  Contrary to Mr. Talbot's representation to the PTO, however, the prior art portions of the GSM Standard, including one or more of the undisclosed portions of the GSM Standard described above, disclosed messaging conduits that included programming information and also specified multiple formats for messaging.

63.     On pages 2-3 of the March 13, 2007 arguments in support of pre-appeal brief request for review filed during prosecution of the '933 patent application, Mr. Talbot represented to the PTO that: "Further, the Examiner seems to apply the present state of the art, instead of the appropriate state of the art when the invention was made.  At the time of the priority filing date

for the current application, the only standard applicable to telecommunications systems with removable modules was the GSM standard. The relevant GSM standard (GSM 11.11 version 3.10.0 February 1992) specified a single format for messaging - there were no enhanced messages for communicating with the module." Contrary to Mr. Talbot's representation to the PTO, however, there were many other portions of the GSM Standard relevant to messaging, including one or more undisclosed portions of the GSM Standard described above.

64. On page 3 of the March 13, 2007 arguments in support of pre-appeal brief request for review filed during prosecution of the '933 patent application, Mr. Talbot represented to the PTO that: "There was only one type of message (the SMS "text" message) and no analysis of the messages was performed in the module . . . . It was not until 1996, three years after the priority filing date, that the standards were amended to allow for the messaging conduit to include programming information and for this functionality to be provided to the SIM." Contrary to Mr. Talbot's representation to the PTO, however, there were other types of messages disclosed in the GSM Standard, including one or more of the withheld portions of the GSM Standard referenced above. Also, SMS messages in the GSM Standard were not limited to "text," and the GSM Standard allowed for messaging conduits that included programming information.

65. On information and belief, Mr. Talbot, in breach of the duty of candor and with intent to deceive the PTO, committed inequitable conduct during the prosecution of the '933 patent application, which renders the '933 patent unenforceable. On information and belief, Mr. Talbot committed inequitable conduct by making material misrepresentations to the PTO during prosecution of the '933 patent application, with an intent to mislead or deceive the prosecuting examiner. On information and belief, Mr. Talbot knew that the representations described above were misleading. Furthermore, on information and belief, Mr. Talbot knew that the

misrepresentations described above were highly material to patentability. Because of the high materiality of these misrepresentations, the PTO would have found at least Claims 1-14 and 16-20 of the '933 patent unpatentable had Mr. Talbot not made those misrepresentations. Those intentional and deceptive misrepresentations constitute inequitable conduct that renders the '933 patent unenforceable.

## SIXTH AFFIRMATIVE DEFENSE

### (Prosecution Laches)

66.     Plaintiff's claims are barred, in whole or in part, because the '933 patent is unenforceable due to prosecution laches. The '933 patent claims priority to a PCT application (No. PCT/GB94/01295) filed on June 15, 1994. That application later issued as the '976 patent. Patentee did not file application No. 10/215,989, the application that led to the '933 patent until August 9, 2002, after filing two additional continuation applications claiming priority to the June 15, 1994 PCT application. The patentee then spent almost fifteen years prosecuting continuation applications until the '933 patent finally issued on June 23, 2009. The patentee has provided no explanation for this unreasonable and unexplained delay in the issuance of the '933 patent, rendering that patent unenforceable on the basis of prosecution laches.

## SEVENTH AFFIRMATIVE DEFENSE

### (License)

67.     Plaintiff's claims are barred, in whole or in part, by express or implied license, release, and/or the doctrine of patent exhaustion.

## EIGHT AFFIRMATIVE DEFENSE

### (Unclean Hands)

68. Plaintiff's claims for equitable relief are barred or limited because Plaintiff has adequate remedies at law and because Plaintiff has unclean hands.

## COUNTERCLAIMS

For its Counterclaims in the above-captioned action, T-Mobile USA, Inc. ("T-Mobile") hereby alleges as follows:

## THE PARTIES

1. T-Mobile is a Delaware corporation whose principal place of business is located at 12920 S.E. 38th Street, Bellevue, WA 98006-1350.

2. On information and belief, Celltrace LLC ("Celltrace") is a Texas limited liability company whose principal places of business are located in Newport Beach, California and Frisco, Texas.

## JURISDICTION AND VENUE

3. These counterclaims arise under federal law, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

4. Venue is proper under at least 28 U.S.C. §§ 1391 and 1400(b).

5. Plaintiff has asserted that T-Mobile infringes U.S. Patent Nos. 6,011,976 ("the '976 patent") and 7,551,933 ("the '933 patent") (collectively, "the patents-in-suit"). An actual controversy exists between T-Mobile and Plaintiff over the alleged infringement and invalidity of the patents-in-suit.

## FIRST COUNTERCLAIM

**(Non-Infringement)**

6. T-Mobile realleges counterclaim Paragraphs 1 through 5 as though fully set forth herein.

7. T-Mobile has not infringed, and does not directly or indirectly infringe, any valid, enforceable claim of the '976 patent or the '933 patent, either literally or under the doctrine of equivalents. T-Mobile has not contributorily infringed nor induced infringement of any valid, enforceable claim of the '976 patent or the '933 patent.

8. Accordingly, T-Mobile is entitled to a declaratory judgment that it does not infringe any valid, enforceable claim of the patents-in-suit.

## SECOND COUNTERCLAIM

### (Invalidity)

9. T-Mobile realleges counterclaim Paragraphs 1 through 8 as though fully set forth herein.

10. The claims of the '976 patent and the '933 patent are invalid for failing to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103 and 112.

11. Accordingly, T-Mobile is entitled to a declaratory judgment that the claims of the patents-in-suit are invalid.

## THIRD COUNTERCLAIM

### (Inequitable Conduct)

12. T-Mobile realleges counterclaim Paragraphs 1 through 11 as though fully set forth herein.

13. T-Mobile incorporates Paragraphs 27-65 of its Fifth Affirmative Defense as though fully set forth herein. For the reasons set forth therein, T-Mobile is entitled to a

declaratory judgment that the patents-in-suit are invalid and unenforceable due to inequitable conduct before the United States Patent and Trademark Office in their prosecution.

## FOURTH COUNTERCLAIM

### (Prosecution Laches)

14.     T-Mobile realleges counterclaim Paragraphs 1 through 13 as though fully set forth herein.

15.     T-Mobile incorporates Paragraph 66 of its Sixth Affirmative Defense as though fully set forth herein.  For the reasons set forth there, T-Mobile is entitled to a declaratory judgment that the '933 patent is invalid and unenforceable on the basis of prosecution laches.

## DEMAND FOR A JURY TRIAL

16.     T-Mobile demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

FOR THESE REASONS, T-Mobile respectfully requests that this Court enter judgment in its favor and grant the following relief:

a.     An order declaring that Plaintiff take nothing from T-Mobile on the claims asserted in Plaintiff's First Amended Complaint;

b.     A declaration that T-Mobile does not infringe any valid and enforceable claim of U.S. Patent Nos. 6,011,976 and 7,551,933;

c.     A declaration that the claims of U.S. Patent Nos. 6,011,976 and 7,551,933 are invalid;

d.     A declaration that U.S. Patent Nos. 6,011,976 and 7,551,933 are unenforceable;

e.     Judgment against Plaintiff in favor of T-Mobile;

f.      Dismissal of Plaintiff's First Amended Complaint with prejudice;

g.      An order declaring that this is an exceptional case under 35 U.S.C. § 285;

h.      An award to T-Mobile of its costs, expenses, and reasonable attorney fees order under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

i.      Any such other relief as the Court may deem appropriate and just under the circumstances.

Dated: April 5, 2011                Respectfully submitted,

/s/  Benjamin Hershkowitz
Josh A. Krevitt, N.Y. Bar No. 2568228
Lead Attorney
Benjamin Hershkowitz, N.Y. Bar No. 2600559
Kevin Cherry, N.Y. Bar No. 4299186
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
jkrevitt@gibsondunn.com
bhershkowitz@gibsondunn.com
kcherry@gibsondunn.com

Mark Reiter
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
mreiter@gibsondunn.com

Michael C. Smith, Esq.
SIEBMAN BURG PHILLIPS & SMITH, LLP
P.O. Box 1556
Marshall, TX 75671-1556
Telephone (903) 938-8900
Facsimile: (972) 767-4620
michaelsmith@siebman.com

Otis W. Carroll
Ireland, Carroll & Kelley, P.C.
6101 South Broadway
Suite 500
Tyler, TX 75703
Telephone: (903) 561-1600
Facsimile: (903) 581-1071
Fedserv@icklaw.com

*Attorneys for Defendant-Counterclaim Plaintiff T-Mobile USA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on April 6, 2011.

*/s/  Benjamin Hershkowitz*
Benjamin Hershkowitz